**ORIGINAL**

GURDEV SINGH[1]
A42-967-796
ICE El Centro Detention Center
1115 N. Imperial Ave.
El Centro, CA 92243

FILED

2009 MAR 12 PM 3: 22

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GURDEV SINGH,<br>[A42-967-796],<br><br>Petitioner,<br><br>v.<br><br>MICHAEL CHERTOFF, SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY, MICHAEL MUKASEY, ATTORNEY GENERAL, ROBIN BAKER, DIRECTOR OF SAN DIEGO FIELD OFFICE, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, ROBERT RILLAMAS, OFFICER-IN-CHARGE,<br><br>Respondents. | Civil Action No.<br><br>**'08 CV 0464 BTM JMA**<br><br>**PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[28 U.S.C. § 2241] |

### I.

### INTRODUCTION

The Petitioner, Gurdev Singh, respectfully petitions this Court for a writ of habeas corpus to remedy his unlawful detention.

Petitioner is in the custody of the Secretary of the Department of Homeland Security and the Attorney

---

[1]The petitioner is filing this petition for a writ of habeas corpus with the assistance of James Fife and the Federal Defenders of San Diego, Inc., who drafted the instant petition. That same counsel also assisted the petitioner in preparing and submitting his request for the appointment of counsel. Robin Baker is the director of the San Diego field office of U.S. Immigration and Customs Enforcement. He administers federal immigration laws on behalf of the Secretary of Homeland Security in the federal judicial district for the Southern District of California. In Mr. Baker's capacity as the director of the local office of U.S. Immigration and Customs Enforcement, he has immediate control and custody over the petitioner. Robert Rillamas is the officer in charge of the detention facility holding the petitioner.

General of the United States and their employees (hereinafter "respondents").  He is detained at the respondents' detention facility in El Centro, California, under the control of the officer in charge.

## II.

### JURISDICTION AND VENUE

This Court has jurisdiction under 28 U.S.C. §§ 1331, 2241(c)(1) and (3), and U.S. Const. art. I., § 9, cl. 2, because the Petitioner is being unlawfully detained as a result of U.S. Immigration and Customs Enforcement's misapplication of the detention provisions of 8 U.S.C. §§ 1226 & 1231.  Federal district courts have jurisdiction to entertain habeas corpus petitions under 28 U.S.C. § 2241 to address the lawfulness of detentions of non-citizens by ICE.  See Zadvydas v. Davis, 533 U.S. 678, 686-90 (2001); Demore v. Kim, 538 U.S. 510, 516-17; Clark v. Martinez, 543 U.S. 371, 379 (2005); Nadarajah v. Gonzales, 443 F.3d 1069, 1075-76 (9th Cir. 2006).  Moreover, his detention violates the Constitution, the laws, and the treaties of the United States, raising a federal question under 28 U.S.C. § 1331.  See Magana-Pizano v. INS, 200 F.3d 603, 610 (9th Cir. 2000); Goncalves v. Reno, 144 F.3d 110, 123 (1st Cir. 1998).  Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471, 482-83 (1999), makes clear that Petitioner's habeas petition is not barred by 8 U.S.C. § 1252(g).

Venue is proper in this district because Petitioner is detained here. See 28 U.S.C. § 2241, et. seq., &  28 U.S.C. § 1391(e).

## III.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

Petitioner's Background

The Petitioner is a native of Punjab state in India.  He was born in Kapūrthala, Punjab on November 28, 1956.  He is a member of the Sikh minority.  He immigrated to the United States on June 26, 1991, along with his wife, Sukvinder, and their two children.  Petitioner was admitted as a lawful permanent resident under the

1  sponsorship of his sister, who is a U.S. citizen. He and his family have lived and worked in Yuba City,

2  California for the 17 years since coming to the country.

3

4      In 2002, Petitioner was convicted of a violation of Cal. Pen. Code § 273.5(a) (willful infliction of

5  corporal injury) and was sentenced to nine months in the county jail, followed by five years of probation.

6  Removal Proceedings and Initiation of Current Detention by Respondents

7      Petitioner was placed in removal proceedings, and an immigration judge ordered him removed to India

8  on January 24, 2007. Petitioner conceded his deportability, but applied for cancellation of removal. The IJ

9

10 denied cancellation on the basis that Petitioner had been convicted of a crime of domestic violence. See 8

11 U.S.C. § 1229b(b)(1)(C).

12 Status of Petitioner's Legal Challenges to Removal

13      Petitioner appealed the IJ's denial of cancellation to the Board of Immigration Appeals. His appeal was

14 denied on March 30, 2007.

15

16      Petitioner filed a petition for review in the Ninth Circuit on April 25, 2007 in Case No. 07-71577.

17 Petitioner argues that the IJ erred in denying cancellation of removal, because the underlying criminal

18 conviction did not qualify as an aggravated felony nor as a crime of domestic violence under Taylor v. United

19 States, 495 U.S. 575 (1990). The petition for review is still pending and Petitioner's opening brief is yet to

20

21 be filed.

22      The Court of Appeals issued a temporary stay of the removal under General Order 6.4(c)(1)(3). That stay

23 was continued pending the outcome of the appeal on August 3, 2007, when the Court construed the

24 Government's failure to file a timely response to the stay motion as non-opposition to the stay.

25 Prior Challenges to Detention

26

27      Petitioner has filed no previous habeas corpus petition challenging his prolonged detention in either this

28 or any other district court.

# IV.

## LEGAL ARGUMENT

### THIS COURT MUST RELEASE THE PETITIONER FROM THE CUSTODY OF THE RESPONDENTS UNDER APPROPRIATE CONDITIONS OF SUPERVISION.

**A.  Introduction.**

Petitioner seeks release from the custody of respondents on the basis of two recent Ninth Circuit decisions, Tijani v. Willis, 430 F.3d 1241 (9th Cir. 2005), and Nadarajah v. Gonzales, 443 F.3d 1069 (9th Cir. 2006).  These cases follow the Supreme Court's principles on indefinite detention laid down in Zadvydas v. Davis, 533 U.S. 678, 689 (2001), and apply them to detainees subjected to prolonged civil immigration detention and whose orders of removal are on review.  These cases hold that it is "constitutionally doubtful" that the detention statutes permit lengthy periods of custody pending outcome of legal challenges.  Under the authority of Tijani and Nadarajah, Petitioner is entitled to release on order of supervision pending resolution of his appeals.

**B.  ICE's Detention Authority Is Limited by Statute and Supreme Court Precedents.**

Two federal statutes authorize civil detention of aliens prior to final removal orders.  Aliens may be detained or released at the discretion of the Attorney General under 8 U.S.C. § 1226(a).  However, aliens who are subject to removal due to certain types of criminal convictions, such as aggravated felonies or crimes of moral turpitude, are detained under so-called mandatory detention provisions in 8 U.S.C. § 1226(c).  Once an order of removal is final, continued detention is governed by 8 U.S.C. § 1231 and implementing regulations.

If detainees with final orders are not removed within the 90-day statutory period, the Attorney General can release them under appropriate conditions of supervision, including regular appearances before an immigration officer, travel restrictions, and medical or psychiatric examinations, among other requirements. See Ma v. Ashcroft, 257 F.3d 1095, 1104 (9th Cir. 2002); see also 8 U.S.C. § 1231(a)(3) (listing the

4

conditions of supervision for deportable or removable aliens released from immigration custody at the expiration of the ninety-day removal period). The Attorney General may detain a deportable or inadmissible alien beyond the removal period only when he determines that the individual would "be a risk to the community or unlikely to comply with the order of removal" if released from immigration custody. 8 U.S.C. § 1231(a)(6).

In <u>Zadvydas</u>, however, the Supreme Court held that this civil detention authority permits only a period of custody that is reasonably necessary to bring about an alien's removal from the United States, and "does not permit indefinite detention." Thus, federal officials **must** release a deportable alien from custody under appropriate conditions of supervision when no "significant likelihood of removal [exists] in the reasonably foreseeable future." <u>Id.</u>; <u>see also</u> <u>Martinez</u>, 543 U.S. at 386-87 (<u>Zadvydas</u> principles applicable equally to class of inadmissible aliens).

In <u>Zadvydas</u>, <u>Kim</u>, and <u>Martinez</u>, the Supreme Court repeatedly recognized that unreasonable, indefinite administrative detention raises serious due process problems. It construed the immigration detention statutes consistently with the Fifth Amendment as permitting detention only during a period reasonably necessary to accomplish removal. <u>See</u> <u>Zadvydas</u>, 533 U.S. at 690; <u>Kim</u>, 538 U.S. at 513; <u>Martinez</u>, 543 U.S. at 386; <u>see also</u> <u>Ly v. Hansen</u>, 351 F.3d 263, 268 (6th Cir. 2003) (immigration detention should last only "for a time reasonably required to complete removal proceedings in a timely manner"). In short, a detention which may be reasonably related to a government purpose at the outset may no longer comply with due process requirements once it becomes unreasonably prolonged. <u>See</u> <u>Zadvydas</u>, 533 U.S. at 699 ("Consequently, interpreting the statute to avoid a serious constitutional threat, we conclude that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute. See 1 E. Coke, <u>Institutes</u> *70b ('*Cessante ratione legis cessat ipse lex*') (the rationale of a legal rule no longer being applicable, that rule itself no longer applies)."); <u>Kim</u>, 538 U.S. at 532 (Kennedy, J., concurring) ("If the Government cannot satisfy this

1  minimal, threshold burden [of removability], then the permissibility of continued detention pending

2  deportation proceedings turns solely upon the alien's ability to satisfy the ordinary bond procedures–namely,

3
4  whether if released the alien would pose a risk of flight or a danger to the community."); Martinez, 543 U.S.

5  at 385 ("In Zadvydas, it was the statute's text read in light of its purpose, not some implicit statutory command

6  to avoid approaching constitutional limits, which produced the rule that the Secretary may detain aliens only

7  for the period reasonably necessary to bring about their removal.").

8
9  **C.  The Ninth Circuit Has Extended the Zadvydas Reasoning to Detentions Pending Review.**

10      The Ninth Circuit in Tijani and Nadarajah has applied the reasoning of these Supreme Court cases to the

11  circumstances of detainees whose orders of removal are still subject to active legal challenges, that is, those

12  detained under 8 U.S.C. § 1226 instead of § 1231.  Consistent with the trend seen in Martinez to bring all

13  classes of indefinitely detained aliens under the due process protections recognized in Zadvydas, Tijani and

14
15  Nadarajah provide relief to detainees in Petitioner's circumstances who are exposed to prolonged civil

16  detention while their appeals are processed.

17      In Tijani, the Court of Appeals reviewed a § 2241 habeas petition by a deportee who had been held in

18  custody for 32 months awaiting the outcome of his appeals.  Tijani held it was "constitutionally doubtful that

19
20  Congress may authorize imprisonment of this duration for lawfully admitted resident aliens who are subject

21  to removal."  430 F.3d at 1242.  Distinguishing Demore v. Kim, because Tijani did not concede he was

22  deportable, the Court ordered his release unless he was provided with a bail hearing and found unsuitable for

23  release under the usual factors of risk of flight or danger to the community.  See id.; see Kim, 538 U.S. at 522-

24  23.  Moreover, Kim was grounded on the Supreme Court's assumption that the period of detention would be

25
26  "brief," only that "necessary for his removal proceedings," which the Supreme Court estimated as roughly six

27  weeks in duration on average, or five months if further review is sought.  See id.; see Kim, 538 U.S. at 522-23,

28  530.  As Tijani's detention while awaiting outcome of his appeals far exceeded these estimates of the

constitutionally permitted "brief period" of detention, he was entitled to release proceedings under the Zadvydas principles. See id. Thus, Tijani was entitled to release on habeas corpus unless the government proved at a hearing before an immigration judge that the Petitioner was a flight risk or danger to the community. See id.[2]

In his concurring opinion, Judge Tashima expanded on the decision in order to provide guidance to the district courts. Judge Tashima saw the heart of the case to be a problematic decision, In re Joseph, 22 I. & N. Dec. 799 (BIA 1999), which he stated erroneously treated 8 U.S.C. § 1226(c) as permitting indefinite detention. See id. at 1243-44 (Tashima, J., concurring). Rather, Zadvydas made it clear that "[w]hen such a fundamental right [as personal liberty] is at stake, the Supreme Court has insisted on heightened procedural protections to guard against the erroneous deprivation of that right." Id. at 1244. The natural limitation on authority to detain, in Judge Tashima's view, is "[o]nly those immigrants who could not raise a 'substantial' argument against their removability should be subject to mandatory detention." Id. at 1247. Such a standard "strikes the best balance between the alien's liberty interest and the government's interest in regulating immigration." Id. Because Tijani had a potentially meritorious claim that his conviction was not a categorical crime of moral turpitude, he made a showing of a "substantial argument" which would warrant release on appeal. See id. at 1247-48.

Judge Tashima observed the perverse penalizing effect of detention for those who have the best reasons to stay and fight: "By subjecting immigrants who, like Tijani, raise difficult questions of law in their removal proceedings to detention while those proceedings are conducted, the Joseph standard forces those immigrants to endure precisely what Tijani has endured: detention that lasts for a prolonged period of months or years."

---

[2]However, in so proving, it is important that the assessment be based on the *current* circumstances relating to the detainee and not simply on past criminal convictions. See Lawson v. Gerlinski, 332 F. Supp.2d 735, 745 (M.D. Pa. 2004) (" 'To presume dangerousness to the community and risk of flight based solely on [an alien's] past record does not satisfy due process.' ") (quoting Ngo v. INS, 192 F.3d 390, 398-99 (3d Cir. 1999)).

1   Id. at 1246 n.3. Judge Tashima concluded that liberty is one of the most fundamental rights protected by the

2   Constitution, and the Supreme Court has indicated time and again that the individual should not carry the

3   burden of protecting this fundamental right. See id. at 1245-46. Moreover, he put into question the continued

4   viability of Joseph, which was decided prior to the Supreme Court's holding in Zadvydas. See id. at 1246;

5   

6   see also Miller v. Gammie, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (lower courts are not bound by prior

7   precedent that has seriously been undermined by intervening Supreme Court authority).

8        In Nadarajah, the Ninth Circuit considered an indefinite detainee held under suspicion of terrorist

9   affiliation. Nadarajah challenged his detention and was pursuing a claim for asylum, but the government

10  relied on the silence of the asylum detention statute to detain Nadarajah while this litigation proceeded. See

11  443 F.3d at 1076-78. However, the Court held that the asylum detention statute was equally subject to the

12  

13  strictures of Zadvydas. See id. at 1082. Moreover, the Court held the principles of Fed. R. App. Proc. 23(b),

14  allowing release on bail pending appeal, apply to such immigration detentions. Id. at 1083. The usual

15  standards operate in such cases: (1) probability of success on merits and irreparable harm; or (2) serious legal

16  

17  question and a balance of the hardships. Id. Moreover, the showing of probable success correspondingly

18  lessens as the length of detention increases. Id. at 1083-84. In Nadarajah, the Court found the 52 months of

19  detention were a great hardship that accordingly reduced the required showing of likelihood of success. Id.

20  

21  **D.  Tijani/Nadarajah Apply to the Facts of This Case.**

22       Petitioner's case compares favorably to the fact situations in Tijani and Nadarajah, and therefore he is

23  equally entitled to consideration for release. Like Tijani, Petitioner can raise his argument for release through

24  the vehicle of a § 2241 petition, and he too can point to substantial arguments regarding both his predicate

25  criminal conviction and the deportation proceeding. Petitioner has raised substantive arguments attacking

26  these underlying proceedings.

27  

28

Petitioner argues in his petition for review in the Ninth Circuit that the IJ erred in refusing cancellation of removal, because his conviction under Cal. Pen. Code § 273.5(a) does not categorically qualify as a crime of domestic violence in the meaning of the statute, nor is there sufficient judicial noticeable documentation in the record to satisfy the <u>Taylor</u> modified categorical analysis. Because a violation of this statute encompasses simple battery in circumstances not amounting to domestic relationships, the statute is overbroad. Petitioner, in particular, pled to simple battery, and so the conviction is overbroad even on the specific facts of his case.

Moreover, Petitioner will argue that he was not informed of the immigration consequences of his plea, and therefore his conviction is invalid under California law. <u>See</u> Cal. Penal Code § 1016.5 (imposing statutory duty upon judiciary to warn aliens about immigration consequences of guilty plea); <u>People v. Gontiz</u>, 68 Cal. Rptr.2d 786 (Ct. App. 1997) (court must inform defendant of all immigration consequences as required by statute); <u>People v. Soriano</u>, 240 Cal. Rptr. 328 (Ct. App. 1987) (allowing defendant to withdraw guilty plea for failure to advise of immigration consequences).

Either of these claims would count as a "substantial question" under the Tashima analysis in <u>Tijani</u>; together, they show Petitioner has a reasonable basis for his legal challenges. As Judge Tashima observed, the detainee need not show certainty of outcome to gain release, just that "a closer look is surely required." <u>Tijani</u>, 430 F.3d at 1248 (Tashima, J., concurring). Chief Judge Gonzales recently applied this same standard to grant <u>Tijani/Nadarajah</u> relief. <u>See</u> <u>Judulang v. Chertoff</u>, No. 07CV1414-IEG (CAB), ___ F. Supp.2d ___, 2008 WL 410684, at *4 (S.D. Cal. Feb. 12, 2008) (copy attached in Appendix).

Also, as in <u>Nadarajah</u>, Petitioner here can demonstrate a basis for release under the factors in Fed. R. App. P. 23(b). He raises substantive and complex legal questions. His continued loss of personal liberty in itself constitutes irreparable harm. As for the balance of hardships, whereas the Court in <u>Nadarajah</u> found the detention was a very burdensome hardship which correspondingly lessened the required showing of likely

9

success on appeal, Petitioner here has been in Respondents' custody for over 16 months, but he is a excellent candidate for release under the regulations governing supervision. <u>See</u> 8 C.F.R. § 241.4(e) & (f). Therefore, there is no prejudice to any legitimate interest of Respondents arising from Petitioner's being admitted to the normal supervision on conditions applying to thousands of other ICE detainees awaiting deportation.

Balancing the factors identified in case law for release of detainees while legal challenges are pending, Petitioner is entitled to release as much as the petitioners in <u>Tijani</u> and <u>Nadarajah</u>. In addition to the severe harm generally flowing from a continued deprivation of personal liberty, his ability to pursue his meritorious appeals and to cooperate with legal counsel on appeal is seriously impaired by continued detention.

As Chief Judge Vanaskie observed in <u>Lawson</u>, 332 F. Supp. 2d at 745:

> The price for securing a stay of removal should not be prolonged incarceration. "Freedom from imprisonment–from government custody, detention, or other forms of physical restraint–lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause protects." <u>Zadvydas</u>, 533 U.S. at 690. "[G]overnment detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections, or, in certain special and 'narrow' non-punitive 'circumstances,' where a special justification, such as harm-threatening mental illness, outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" <u>Id.</u> The fact that the alien has procured a stay of removal does not undermine the due process bedrock principle that there must be a "special justification" outweighing the alien's constitutionally-protected interest in liberty, as well as "adequate procedural protections" to continue incarceration while the alien litigates his claims.

Consonant with these principles, this Court and other district courts have granted Petitioners relief in cases which have raised identical claims under <u>Tijani</u> and <u>Nadarajah</u>, recognizing that indefinite detention pending substantive legal challenges violates due process. <u>See</u> <u>Judulang v. Chertoff</u>; <u>Mustanich v. Gonzales</u>, No. 07CV1100-WQH (LSP), 2007 WL 2819732 (S.D. Cal. Sept. 27, 2007); <u>Martinez v. Gonzales</u>, 504 F. Supp.2d 887 (C.D. Cal. 2007); <u>Malcalma v. Chertoff</u>, No. 06CV2623-WQH (AJB), 2007 WL 1516744 (S.D. Cal. May 22, 2007). Copies of orders granting relief in these cases are attached hereto in the Appendix.

///
///

## V.

## **REQUESTED RELIEF**

The Petitioner requests that this Court order the respondents to release him from custody under the conditions of supervision set forth in 8 U.S.C. §1231(a)(3). Alternatively, the Court should order an eviddentiary hearing before this Court to evaluate Petitioner's eligibility for supervision under appropriate conditions.

## VI.

## **VERIFICATION**

I, Gurdev Singh, hereby verify that the facts contained in the instant Petition are true and correct

Respectfully submitted,

Dated: 3/12/08

*Gurdev Singh*

**GURDEV SINGH**
Petitioner

# Appendix

Westlaw.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 410684 (S.D.Cal.)
(Cite as: --- F.Supp.2d ----)

Page 1

Judulang v. Chertoff
S.D.Cal.,2008.
Only the Westlaw citation is currently available.
United States District Court,S.D. California.
Joel JUDULANG, Petitioner,
v.
Michael CHERTOFF, Alberto Gonzales, Robin F.
Baker, and Gabriela Pacheco, Respondents.
No. 07CV1414.

Feb. 12, 2008.

Janet Tung, Federal Defenders, Federal Defenders
of San Diego, San Diego, CA, for Petitioner.
Raven M. Norris, US Attorney CV, US Attorneys
Office Southern District of California, San Diego,
CA, for Respondents.

**ORDER GRANTING IN PART PETITION
FOR WRIT OF HABEAS CORPUS**

IRMA E. GONZALEZ, Chief Judge.

*1 Presently before the Court is petitioner Joel
Judulang's petition for writ of habeas corpus pursu-
ant to 28 U.S.C. § 2241. (Doc. No. 1 .) For the fol-
lowing reasons, the Court grants the petition in part
and orders respondents to provide petitioner with a
bail hearing.

BACKGROUND

*Factual Background*

The parties agree as to the relevant facts. Peti-
tioner, born in the Phillipines, has been a lawful
permanent resident of the United States since July
4, 1974. On October 11, 1989, petitioner was con-
victed of voluntary manslaughter in California state
court and sentenced to a six-year suspended sen-
tence. (Respondents' Opposition, Ex. B.) On June
12, 2003, petitioner was convicted of grand theft in
California state court and sentenced to two years

and eight months in prison. (*Id.* Ex. C.)

On July 7, 2005, petitioner was taken into cus-
tody by Respondents due to the initiation of remov-
al proceedings. He was charged with deportability
pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii) and (iii)
which allow the deportation of an alien convicted
of an aggravated felony and the deportation of an
alien convicted of two or more crimes involving
moral turpitude. Two and a half years later, peti-
tioner remains in custody at the Immigrations and
Customs Enforcement ("ICE") El Centro Detention
Center. On September 28, 2005, an immigration
judge ordered petitioner removed. (Opp.Ex. E.) Pe-
titioner appealed to the Board of Immigration Ap-
peals ("BIA"), which denied his appeal on February
3, 2006. (Opp. Ex. F .)

Petitioner filed a petition for review of the
BIA's decision in the Ninth Circuit Court of Ap-
peals on February 24, 2006. (Opp.Ex. G .) His peti-
tion for review contests his removability on several
grounds. Petitioner concurrently filed a motion for
stay of removal, which Respondents did not op-
pose, and the court granted on July 7, 2006. (*Id.*)
Petitioner filed his opening brief on October 23,
2006, and Respondents filed an opposition on
December 7, 2006.(*Id.*) The Ninth Circuit heard or-
al argument on June 4, 2007. (*Id.*) The Ninth Cir-
cuit then stayed petitioner's case pending the out-
come of another case addressing the same issue
raised by petitioner, *Abebe v. Gonzales.*In a pub-
lished opinion in *Abebe,* 493 F.3d 1092, 1099 (9th
Cir.2007), the court rejected a detainee's argument
under Section 212(c) of the Immigration and Natur-
alization Act which was identical to one of petition-
er's claims in his appeal. The Ninth Circuit has
since withdrawn its opinion pending rehearing of
*Abebe en banc* (Petitioner's Notice, Doc. No. 9).
The court cited *Abebe* in denying petitioner's appeal
as to his Section 212(c) argument (*id.* at 5), and pe-
titioner argues the court is likely to rehear his case
after rehearing *Abebe* (Doc. No. 11).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 410684 (S.D.Cal.)
(Cite as: --- F.Supp.2d ----)

According to the documents attached to respondents' opposition in this case, petitioner's continued detention has been reviewed twice during the pendency of his Ninth Circuit appeal. On June 6, 2006, petitioner was informed of ICE's decision to continue to detain him due to his failure "to demonstrate" he "will not pose a flight risk."(Opp.Ex. I.) On June 5, 2007, petitioner was informed of the ICE's decision to continue detention by a letter explaining he is "an extreme threat to the community" and thus will remain in ICE custody pending removal from the United States. (Opp.Ex. H.)

### Procedural Background

**\*2** After the instant petition was filed on August 2, 2007, the Court granted petitioner's accompanying motions to proceed *in forma pauperis* and motion for appointment of counsel. (Docs. No. 1-4). Respondents filed a return in opposition on September 17, 2007. (Doc. No. 8.) On October 1, 2007, respondents filed a notice of the Ninth Circuit's denial of petitioner's appeal. (Doc. No. 9.) On October 9, 2007, petitioner filed a traverse. (Doc. No. 10.) On January 28, 2008, petitioner filed a notice of the Ninth Circuit's decision to rehear *Abebe en banc.*(Doc. No. 11.)

### DISCUSSION

### Jurisdiction

Pursuant to 28 U.S.C. § 2241, alien detainees can properly challenge "the extent of the Attorney General's authority" to detain a removable alien under the statutes authorizing detention. *Zadvydas v. Davis,* 533 U.S. 678, 687-89, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001); *see also Demore v. Kim,* 538 U.S. 510, 516-17, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003). Where, as here, an administrative order of removal is not final, "habeas corpus jurisdiction remains in the district court."*Nadarajah v. Gonzales,* 443 F.3d 1069, 1075-76 (9th Cir.2006); *see also*8 U .S.C. § 1231(a)(1) (describing how a removal order

becomes final).

### Petitioner's Claim

As an initial matter, the Court considers the statutory authorization for petitioner's detention pending the outcome of his Ninth Circuit appeal. Respondents contend petitioner is being detained pursuant to the discretionary authority of 8 U.S.C. § 1226(a)(1) rather than the mandatory provision of Section 1226(c).Section 1226(a) permits the arrest and detention of an alien "pending a decision on whether the alien is to be removed from the United States."Section 1226(c) sets out specific cases in which that detention is mandatory, for example, when the alien has committed certain classes of criminal offenses. Respondents contend Section 1226(c) only applies during administrative removal proceedings, while Section 1226(a) continues to apply after the end of the administrative process and through judicial review. No such temporal distinction is made in the statute.[FN1]The court rejects the argument petitioner's detention, previously mandatory under Section 1226(c), is now discretionary under Section 1226(a).[FN2] Moreover, the distinctions between Sections 1226(a) and (c) are not relevant in assessing the reasonableness of prolonged detention under either provision. Discretionary detention, like mandatory detention, must comply with due process of law. *Nadarajah v. Gonzales,* 443 F.3d 1069, 1076, 1079-80 (9th Cir.2006) (assessing reasonableness of discretionary detention under another statutory provision).[FN3]

The Supreme Court and the Ninth Circuit have previously assessed the reasonableness of detention under Section 1226(c) pending a final order of removal. In *Demore v. Kim,* the Supreme Court held aliens may be detained under Section 1226(c)"for the brief period necessary for their removal proceedings."538 U.S. 510, 513, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003). In that case, detainee Hyung Joon Kim conceded deportability and was held for approximately six months during his administrative proceedings. Kim argued he could not be detained

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 410684 (S.D.Cal.)
(Cite as: --- F.Supp.2d ----)

without the government establishing, at an individualized bond hearing, that he was a flight risk or a danger to the community. The Court rejected his argument. First, the Court distinguished an earlier case in which it held aliens could not be detained indefinitely after being ordered removed.*Zadvydas v. Davis,* 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). In distinguishing *Zadvydas,* the Court noted an alien's detention during removal proceedings serves government interests which are not furthered by the continued detention of individuals who, while ordered removed, have no prospect of future removal. *Kim,* 538 U.S. at 527-28. The Court also emphasized detention during removal proceedings is "of a much shorter duration" than the "indefinite" and "potentially permanent" detention at issue in *Zadvydas. Id.* at 528.Reviewing statistics from the Executive Office for Immigration Review, the Court concluded removal proceedings "last an average time of 47 days and a median of 30 days."*Id.* at 529.Appeals to the BIA, taken by about 15% of aliens, take "an average of four months." *Id.* The Court found Kim's detention for six months was reasonable despite being slightly longer than average. *Id.*

**\*3** However, the Ninth Circuit has since held prolonged detention during removal proceedings is not permissible under section 1226(c).*Tijani v. Willis,* 430 F.3d 1241, 1242 (9th Cir.2005). The court distinguished *Kim* because the petitioner, Monsuru Tijani, had not conceded deportability. *Id.* In a brief opinion, the court stated in part:

As of today's date, Tijani has been deprived of his liberty by the government for a period of over two years and eight months. This deprivation has been inflicted not as the result of any adjudication of crime but as a bureaucratic application of the authority conferred on the Attorney General by 8 U.S.C. § 1226(c). Despite the substantial powers that Congress may exercise in regard to aliens, it is constitutionally doubtful that Congress may authorize imprisonment of this duration for lawfully admitted resident aliens who are subject to removal..... Two years and eight months of process is not

expeditious; and the foreseeable process in this court, where the government's brief in Tijani's appeal of the removal was only filed last month after two extensions of time, is a year or more.

*Id.*

Petitioner argues, and the court agrees, *Tijani* mandates a bail hearing in petitioner's case. Respondents argue *Tijani* does not apply because petitioner's detention became "voluntary" when he chose to appeal to the Ninth Circuit.[FN4]Some district courts have limited *Tijani's* application to cases in which the unreasonably long detention occurred primarily during administrative proceedings, rather than during an appeal by the detainee to the Ninth Circuit.[FN5]But as other district courts have noted,FN6*Tijani* expressly considered the length of detention attributable to judicial review in concluding the detention had been unreasonably long. 430 F.3d at 1242. By ordering a bail hearing for Tijani after the end of his administrative proceedings and while he was seeking Ninth Circuit review of his removal order, the court implicitly rejected the view his detention had become "voluntary." The court's result, granting Tijani's writ of habeas corpus, is inconsistent with respondents' argument detention during an alien's appeal is "voluntary."

This Court therefore agrees with the other district courts which have included time detained pending judicial review in assessing the reasonableness of a prolonged detention.[FN7]This approach is consistent with the Supreme Court's decision in *Kim.*In that case, the Court placed great weight on the expedient nature of removal proceedings in holding detention during that "brief period" was permissible without a showing of dangerousness or flight risk. 538 U.S. at 529. Judicial appeals, whether undertaken by the detainee or the government, necessarily prolong detention past the "brief period" approved by *Kim.*[FN8]

The district courts which have disregarded appellate time in assessing the reasonableness of prolonged detention were concerned with the potential

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 410684 (S.D.Cal.)
(Cite as: --- F.Supp.2d ----)

for dilatory tactics and frivolous appeals by detainees. *E.g. Mboussi-Ona v. Crawford,* No. CV 06-2897 PHX-NVW, 2007 WL 3026946 at *5 (D.Ariz. Sept.27, 2007) (stating if appellate time counted, "merely by seeking judicial review, every alien found removable would be entitled to an individualized bond hearing and possible release"). But these concerns do not require the Court to disregard detention during judicial review. Instead, "[a] court must 'be sensitive to the possibility' that a removable alien may engage in 'dilatory tactics' in order to 'compel a determination' that his detention was unreasonably long."*Martinez v. Gonzalez,* 504 F.Supp.2d 887, 898 (C.D.Cal.2007) (internal citations omitted); *see also Mustanich,* 2007 WL 2819732 at *9. Circuit Judge Tashima, concurring in *Tijani,* would require a detainee's appeal to raise a "substantial argument" in order for detention during judicial review to be included in assessing reasonableness. 430 F.3d at 1247.

*4 Here, respondents do not argue petitioner's appeal is without merit. *See Martinez,* 504 F.Supp.2d at 899. Petitioner's appeal relies on a Second Circuit decision, *Blake v. Carbone,* 489 F.3d 88 (2d Cir.2007), which conflicts with the Ninth Circuit's decision in *Abebe v. Gonzales.*In *Abebe,* Circuit Judge Berzon wrote a concurring opinion agreeing with the Second Circuit's decision in *Blake* and urging reconsideration of the case. 493 F.3d 1092, 1106 (Berzon, C.J., concurring). The Ninth Circuit has voted to rehear *Abebe en banc.*Thus petitioner's appeal has raised a "substantial question," and resolution of his appeal is likely to take up to a year while the court reviews *Abebe* and its decision in petitioner's case. *See Tijani,* 430 F.3d at 1242 (anticipating another year of litigation at the Ninth Circuit). The length of petitioner's detention during appeal is attributable to the complexity of the issues he has raised, not dilatory tactics on the part of petitioner or the government.

The Court thus concludes detaining petitioner for two and a half years without showing he is a flight risk or a danger to the community is unreasonable and not statutorily authorized by 1226(c).*Cf. Tijani,* 430 F.3d at 1242 (finding two years and eight months unreasonable); *Zadvydas,* 533 U.S. at 701 (finding six months presumably reasonable); *Kim,* 538 U.S. at 529 (finding six months reasonable).

### Remedy

Petitioner requests he be released, or, in the alternative, given a release hearing to evaluate his eligibility for supervision "under appropriate conditions." (Petition at 9.) The Ninth Circuit in *Tijani* remanded the case to the district court:

with directions to grant the writ unless the government within 60 days of this order provides a hearing to Tijani before an Immigration Judge with the power to grant him bail unless the government establishes that he is a flight risk or will be a danger to the community.

430 F.3d at 1242. In *Mustanich,* Judge Hayes also found it appropriate to grant the petitioner a bail hearing before an Immigration Judge within ten days. 2007 WL 2819732 at *8. A bail hearing will give respondents an opportunity to assess whether petitioner's continued detention is justified.

Respondents argue immigration judges lose jurisdiction over bond decisions after the end of administrative proceedings, citing 8 C.F.R. § 1003.19(a). Under that section, "[c]ustody and bond determinations ... may be reviewed by an Immigration Judge pursuant to 8 CFR part 1236."Section 1003.19(c)(1) states applications by a detainee for review of a bond determination shall be made to "the Immigration Court having jurisdiction over the place of detention."Respondents have cited no authority which states or implies an immigration judge would not have jurisdiction to review the custody determination in petitioner's case, and the Court's independent review found no support for respondents' position.[FN9]

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 410684 (S.D.Cal.)
(Cite as: --- F.Supp.2d ----)

CONCLUSION

   *5 For the foregoing reasons, the Court hereby GRANTS IN PART the petition for writ of habeas corpus. Respondents are ORDERED to provide petitioner a hearing within thirty days of this order before an immigration judge with the power to grant him bail unless the government establishes that he is a flight risk or will be a danger to the community.

**IT IS SO ORDERED.**

   FN1. Respondents support their argument by citing the regulations, which specify "no alien described in section 236(c)(1) of the Act may be released from custody during removal proceedings."8 C.F.R. § 1236.1(c)(1)(i). Respondents then argue "removal proceedings" only encompasses administrative proceedings, citing *Demore v. Kim,* 538 U.S. 510, 513, 517-18, 527-28, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003). While the Court in that case only considered administrative proceedings, those were the only proceedings the petitioner had undergone. Moreover, the Court never stated removal proceedings only included those before the administrative agency, nor did it interpret the statute or the regulations containing such a limitation. Respondents have cited no authority stating Section 1226(c) only applies during administrative proceedings.

   FN2. In a factually analogous case in which an alien was detained pending judicial review of the BIA's decision, *Tijani v. Willis,* the Ninth Circuit evaluated the detention under Section 1226(c).430 F.3d 1241, 1242 & 1246 (9th Cir.2005). Judge William Q. Hayes rejected respondents' argument in an unpublished decision in *Mustanich v. Gonzales,* No. 07cv1100 WQH, 2007 WL 2819732 at *5 (S.D.Cal. Sept.26, 2007).

   FN3. Accordingly, while the Court evaluates petitioner's detention in light of the decisions interpreting Section 1226(c), the Court would do the same if Section 1226(a) applied.

   FN4. Respondents rely on an unpublished decision in *Cruz-Ortiz v. Gonzales,* 221 F. App'x 531 (9th Cir.2007). In that case, the court found the district court lacked jurisdiction. Without citation to *Tijani,* the court then stated "[i]n any event, appellant is being voluntarily detained-upon his requested stay of removal-pending appeal of his final removal order."*Id.* The brief, unpublished decision does not explain the facts of the case, the statutory basis for detention, or whether the petitioner contested removability. Moreover, Tijani had appealed to the Ninth Circuit and the court did not hold in that published decision his detention had thus become "voluntary." *Tijani,* 430 F.3d at 1242.

   FN5.*See, e.g., Raghunath v. Crawford,* No. CV 07-0282 PHX-FJM, 2007 WL 4285387 at *3 (D.Ariz. Dec.03, 2007) (holding *Tijani* did not apply where prolonged detention was due to petitioner's Ninth Circuit appeal); *Mboussi-Ona v. Crawford,* No. CV 06-2897 PHX-NVW, 2007 WL 3026946 at *5 (D.Ariz. Sept.27, 2007) (finding "normal judicial appeal time" does not count toward unreasonableness of detention); *see also Bernal v. Chertoff,* No. 06cv2184 JAH at 4 (attached as Exhibit K to Respondent's Opposition) ("[Petitioner] is awaiting his pending judicial appeal-an appeal that he has chosen to pursue in the United States. Because it was Petitioner's own doing that he is still in detention here, there is no 'detention by default' as it was in *Tijani.*").

   FN6. As Judge Hayes wrote in *Mustanich:* Whether detention pending judicial review can

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 410684 (S.D.Cal.)
**(Cite as: --- F.Supp.2d ----)**

be considered in assessing the reasonableness of an alien's mandatory detention pursuant to 8 U.S.C. § 1226(c), and if so, how it should be considered, is a question that has not been explicitly addressed by either the United States Supreme Court of the Court of Appeals for the Ninth Circuit. However, the Court of Appeals for the Ninth Circuit referenced the period of judicial review which had elapsed and that which was yet to come in support of its holding in *Tijani* that the alien's removal proceedings were not expeditious, and it is apparent that the *Tijani* Court included at least some time which accrued during judicial review in its conclusion that the petitioner had been detained for two years and four months.

2007 WL 2819732 at *9 (internal citations omitted); *but see Mboussi-Ona,* 2007 WL 3026946 at *4 ("[A]lthough the court mentioned the length of Tijani's judicial appeal, that fact was not encompassed within an articulated rationale of the court" because the administrative time predominated.).

> FN7.*See, e.g., Martinez v. Gonzalez,* 504 F.Supp.2d 887, 897 (C.D.Cal.2007) (rejecting argument time detained during judicial appeals does not count toward the reasonableness of a lengthy detention); *Mustanich,* 2007 WL 2819732 at *8 ("After reviewing the relevant case law, and particularly *Tijani,* the Court concludes that it can and must consider periods of detention which accrue pending judicial review in determining whether removal proceedings and detention pursuant to 8 U.S.C. § 1226(c) are expeditious and reasonable."); *Ali v. Crawford,* No. CV 06-01149 PHX-EHC, 2007 WL 1670165 at *4 (D.Ariz. June 8, 2007) (holding where petitioner contested removability, prolonged detention violated *Tijani* even if not due to the unreasonable delay of the INS); *Yoon v. Crawford,* No. CIV 06-3068 PHX-SMM (MHB), 2007 WL 4609573 at *4 (D.Ariz. Aug.22, 2007) (recommending the district court apply *Tijani* despite the

majority of the detention being attributable to Ninth Circuit appeal) (adopted by the district court in 2008 WL 45405 (Jan. 02, 2008)).

> FN8. As in *Tijani,* and unlike in *Kim,* petitioner's Ninth Circuit appeal contests deportability. *Tijani* found this a persuasive distinction. 430 F.3d at 1242.

> FN9. The cases indicate an immigration judge can hold such a hearing. Without addressing the immigration judge's authority, the Ninth Circuit ordered a bond hearing in *Tijani,* after the administrative proceedings had ended. In *Mustanich,* Judge Hayes ordered a bail bond hearing for a detainee held pending Ninth Circuit review. According to later submissions by the petitioner, that bond hearing was held within ten days. (Motion to Alter Judgment by Jess Mustanich, Doc. No. 7, Case No. 07cv1100.)

S.D.Cal.,2008.
Judulang v. Chertoff
--- F.Supp.2d ----, 2008 WL 410684 (S.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                    Page 1
Slip Copy, 2007 WL 2819732 (S.D.Cal.)
**(Cite as: Slip Copy)**

**C**
Mustanich v. Gonzales
S.D.Cal.,2007.
Only the Westlaw citation is currently available.
    United States District Court,S.D. California.
    Jess MUSTANICH, aka Jess William Alfaro, Petitioner,
                          v.
    Alberto GONZALES, et al., Respondents.
          **No. 07CV1100 WQH (LSP).**

              Sept. 26, 2007.

ORDER GRANTING PETITION FOR WRIT OF
          HABEAS CORPUS IN PART

HAYES, Judge.
    *1 Pending before the Court is Petitioner Jess
Mustanich's Petition for Writ of Habeas Corpus
pursuant to 28 U.S.C. § 2241. (Doc. # 1).


                **BACKGROUND**

    Born in El Salvador on August 15, 1978, Petitioner Jess Mustanich was adopted by United States
citizens shortly after his birth and moved to the
United States. Petition for Writ of Habeas Corpus
(Pet .), ¶ 15. On February 22, 1979, the United
States admitted Petitioner, age six months, as a lawful permanent resident. Pet., ¶ 15.

    In 1988, Petitioner's father met with and telephoned officers of the Department of Homeland Security in an attempt to secure United States citizenship for Petitioner pursuant to 8 U.S.C. §
1433.[FN1] Pet., ¶ 9; Return, Ex. C at 4-6. Petitioner's
father also sought the help of a juvenile court. Return, Ex. C at 4-6. However, Petitioner's father was
unsuccessful in timely completing the paperwork
necessary to secure citizenship for Petitioner. Pet.,
¶ 9. Petitioner alleges that the United States Government's neglect and error resulted in Petitioner's
application for citizenship not being processed be-

fore Petitioner's eighteenth birthday. Pet., ¶ 9; Return, Ex. C at 4-6.

    FN1. Pursuant to 8 U.S.C. § 1433, "a citizen of the United States may apply to the
    Attorney General for a certificate of citizenship on behalf of a child born outside
    the United States," and the Attorney General "shall issue such a certificate" if statutory conditions are fulfilled.

    On April 15, 1997, Petitioner was convicted of
two counts of residential burglary, in violation of
California Penal Code §§ 459 and 460(a). Pet., ¶
16. On December 21, 1998, Petitioner was convicted of being a prisoner in possession of a sharp
instrument, in violation of California Penal Code §
4502(A). Pet., ¶ 16.

    On July 10, 2003, Respondents took Petitioner
into custody and initiated removal proceedings
against him pursuant to 8 U.S.C. §
1227(a)(2)(A)(iii), which provides for the removal
of an alien convicted of an aggravated felony. Pet.,
¶ 17; Return, Ex. B. On February 10, 2004, an Immigration Judge (IJ) denied Petitioner's request for
termination of removal proceedings and ordered Petitioner removed to El Salvador. Pet., ¶ 17; Return,
Ex. C. Petitioner argued unsuccessfully to the IJ
that the United States Government delayed and
wrongfully impeded Petitioner's father's attempt to
secure citizenship for Petitioner. Pet., ¶ 15; Return,
Ex. C. On July 29, 2004, the Bureau of Immigration
Appeals (BIA) affirmed the IJ's administrative order of removal. Pet., ¶ 17; Return, Ex. D.

    On August 26, 2004, Petitioner filed a Petition
for Review of the BIA decision in the Court of Appeals for the Ninth Circuit. Pet., ¶ 6; Return, Ex. H
(Docket, Court of Appeals for the Ninth Circuit
Case No. 04-74290). Petitioner also filed a motion
to stay deportation. Return, Ex. H. On August 27,
2004, the Court of Appeals for the Ninth Circuit
ordered Respondents to respond to Petitioner's mo-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2819732 (S.D.Cal.)
(Cite as: Slip Copy)

tion to stay deportation and to file the administrative record on or before October 26, 2004. Return, Ex. H. Respondents did not comply with the Court of Appeals' order. On November 3, 2004, Respondents requested an additional three months to file the administrative record and a response to Petitioner's motion to stay deportation. Return, Ex. H. On November 8, 2004, the Court of Appeals for the Ninth Circuit granted Respondents' request for an extension of time, and ordered Respondents to file the administrative record and a response to Petitioner's motion to stay deportation on or before January 25, 2005. Return, Ex. H. Respondents once again did not comply with the order of the Court of Appeals. Return, Ex. H. On January 28, 2005, Respondents filed the administrative record. Return, Ex. H.

*2 On February 7, 2005, the Court of Appeals accepted Respondents' late filing of the administrative record, but noted that Respondents had "failed to file a response to the motion for a stay."Return, Ex. H. The Court of Appeals ordered that "within 21 days from the date of this order, [respondents] shall file a response to the motion for stay. In light of this delay, if [respondents] [fail] to comply with this order, the court will construe [respondents'] failure to respond as a [statement] of non/opp to the stay motion." Return, Ex. H.

Respondents did not file a response to Petitioner's motion to stay deportation within 21 days of the Court of Appeals' February 7, 2005, order. Return, Ex. H. On March 10, 2005, the Court of Appeals ordered that, "[i]n light of this [court's] Feb. 7, 2005 order, [respondents'] failure to respond to the motion to stay removal is construed as a statement of non/opp to the stay motion." Return, Ex. H. The Court of Appeals granted Petitioner's motion for stay of deportation, and set a briefing schedule with respect to Petitioner's Petition for Review of the BIA's decision. Return, Ex. H.

On May 19, 2005, Petitioner filed the opening brief in the Court of Appeals. Return, Ex. H. Thereafter, on June 17, 2005, Respondents sought an ex-

tension of time to file an answering brief. Return, Ex. H. On July 6, 2005, the Court of Appeals granted Respondents' motion for an extension, and ordered Respondents to file an answering brief on or before July 29, 2005. Return, Ex. H. Respondents filed an answering brief on August 4, 2005. Return, Ex. H.

On June 18, 2007, Petitioner filed the pending Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. # 1). As of the date of the Petition, Petitioner had been incarcerated for three years and eleven months. Pet., ¶ 31.

During Petitioner's detention, Respondents internally reviewed the terms of Petitioner's detention on three occasions. Return, Exs. E-G. On February 2, 2005, Respondents concluded that Petitioner could not be released on supervision because, "you have demonstrated your inability and/or lack of respect for the laws of this country as is reflected in your criminal and immigration record ."Return, Ex. E. Respondents did not interview Petitioner before the February 2, 2005, custody determination, and did not identify Petitioner as a flight risk or a danger to the community at the time. Return, Ex. E. On November 1, 2005, Respondents concluded that Petitioner could not be released on supervision because he was considered a "flight risk." Return, Ex. F. Respondents did not interview Petitioner before the November 1, 2005, custody determination, but noted that Petitioner had a place to live, close family ties, and employment prospects in the United States. Return, Ex. F. Respondents also concluded that Petitioner did not meet any of the criteria for continued detention pursuant to 8 C.F.R. § 241.14. Return, Ex. F. On November 8, 2006, Respondents concluded that Petitioner could not be released on supervision because he was considered "a threat to the community," and a "flight risk." Return, Ex. G. Respondents did not interview Petitioner before the November 8, 2006, custody determination. Return, Ex. G.

*3 During each of the three internal custody reviews, Respondents indicated that Petitioner was

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

being detained as an alien removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). *See* Return, Exs. E-G.

Petitioner has not received a bail hearing before an IJ during his more than four year detention. Pet., ¶ 31.

## DISCUSSION

Petitioner contends that he should be released pending resolution of his Petition for Review in the Court of Appeals for the Ninth Circuit. Petitioner contends that he is being detained indefinitely under the general detention statutes in violation of those statutes and the Constitution as articulated in *Zadvydas v. Davis,* 533 U.S. 678 (2001), *Tijani v. Willis,* 430 F.3d 1241 (9th Cir.2005), and *Nadarajah v. Gonzales,* 433 F.3d 1069 (9th Cir.2006). Petitioner contends that there is no significant likelihood that he will be removed in the reasonably foreseeable future. Petitioner further contends that the sheer length of his detention-over four years as of the date of this Order-violates his right to due process. Petitioner contends in the alternative that he is entitled to a bail hearing before an immigration judge.

Respondents contend that Petitioner is being detained pursuant to 8 U.S.C. § 1226(a), and that *Tijani* and *Nadarajah* do not apply to discretionary detention under 8 U.S.C. § 1226(a). Respondents further contend that the delay in removing Petitioner is due to Petitioner's Petition for Review and motion for a stay of removal in the Court of Appeals for the Ninth Circuit, and that the delay is not attributable to Respondents. Respondents contend that Petitioner's release is reasonably foreseeable and that the length of Petitioner's detention does not violate due process.

## I. Jurisdiction

Pursuant to 28 U.S.C. § 2241, alien detainees can properly challenge "the extent of the Attorney General's authority" to detain a removable alien un-

der the general detention statutes. *Zadvydas v. Davis,* 533 U.S. 678, 687-89 (2001); *see also Denmore v. Kim,* 538 U.S. 510, 516-17 (2003). Whereas here, an administrative order of removal is not final, "habeas corpus jurisdiction remains in the district court ...." *Nadarajah v. Gonzales,* 443 F.3d 1069, 1075-76 (9th Cir.2006); *see also* 8 U .S.C. § 1231(a)(1) (describing how a removal order becomes final).

## II. Respondents' Authority to Detain Petitioner

Respondents contend that Petitioner is currently being detained by the Department of Homeland Security (DHS) pursuant to its discretionary authority under 8 U.S.C. § 1226(a)(1). Respondents explain that DHS detained and charged Petitioner in July of 2003 as a criminal alien subject to deportation for commission of an aggravated felony, and that Petitioner was subject to mandatory detention pursuant to 8 U.S.C. § 1226(c)(1)(B) between July 10, 2003, the original date of detention, and July 19, 2004, the date that the Bureau of Immigration Appeals (BIA) affirmed the IJ's order of removal. Return at 2-3. Respondents contend that the statutory authority to detain Petitioner changed administratively from 8 U.S.C. § 1226(c) to 8 U.S.C. § 1226(a) when Petitioner appealed the decision of the BIA to the Court of Appeals for the Ninth Circuit. Return at 4-5 ("Detention authority changes administratively when the removal order becomes administratively final."). Respondents contend that an alien cannot be detained pursuant to 8 U.S.C. § 1226(c) during the time that the alien's appeal from an order of removal is pending in the Court of Appeals.

*4 Petitioner does not address whether 8 U.S.C. § 1226(a) or 8 U.S.C. § 1226(c) is the proper basis for Petitioner's detention, but Petitioner acknowledges Respondents' contention that Petitioner is currently being discretionarily detained pursuant to 8 U.S.C. § 1226(a).

8 U.S.C. § 1226 provides for the discretionary

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2819732 (S.D.Cal.)
(Cite as: Slip Copy)

and mandatory detention of removable aliens by the Attorney General. 8 U.S.C. § 1226(a) outlines the Attorney General's discretionary power to detain aliens, and provides that the Attorney General may arrest and detain an alien "pending a decision on whether the alien is to be removed from the United States."8 U.S.C. § 1226(a). Those aliens detained pursuant to 8 U.S.C. § 1226(a) may be released on bond in the discretion of the Attorney General. *See*8 U.S.C. § 1226(a) (2).8 U.S.C. § 1226(c) provides for the mandatory detention of certain aliens, including aliens who are removable by reason of having committed an aggravated felony pursuant to 8 U.S.C. § 1227(a) (2)(A)(iii) and 8 U.S.C. § 1101(a)(43).*See*8 U.S.C. § 1226(c)(1)(B). Aliens subject to mandatory detention under 8 U.S.C. § 1226(c) must be detained by the Attorney General, and are not statutorily entitled to release on bond during the removal period except under the limited circumstances outlined in 8 U.S.C. § 1226(c)(2), which are not relevant here.[FN2]*See*8 C.F.R. § 236.1(c)(1) ("[N]o alien described in section 236(c)(1) of the Act may be released from custody during removal proceedings except pursuant to section 236(c)(2).").

> FN2. An alien mandatorily detained pursuant to 8 U.S.C. § 1226(c), could also be released by the Attorney General if the Attorney General determined that the length and circumstances of the alien's detention no longer was authorized by 8 U.S.C. § 1226(c) or violated the United States Constitution. *See Tijani,* 443 F.3d at 1242 ("[W]e interpret the authority conferred by § 1226(c) as applying to expedited removal of criminal aliens;'"it constitutionally doubtful that Congress may authorize imprisonment of this duration for lawfully admitted resident aliens who are subject to removal.").

Respondents concede that Petitioner was detained and charged in July 2003 as an alien subject to removal for conviction of an aggravated felony

pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) and 8 U.S.C. § 1101(a)(43)(g), and Petitioner does not dispute that he was convicted in California state court of two counts of First Degree Burglary in April of 1997. Respondents likewise concede that Petitioner was subject to mandatory detention pursuant to 8 U.S.C. § 1226(c) during his administrative removal proceedings before the IJ and BIA. However, Respondents argue that Petitioner's current detention is not pursuant 8 U.S.C. § 1226(c) because Petitioner's detention changed administratively from 8 U.S.C. § 1226(c) to 8 U.S.C. § 1226(a) when Petitioner appealed the decision of the BIA to the Court of Appeals for the Ninth Circuit.

Aside from citing to Code of Federal Regulation provisions which do not discuss the effect of judicial review on mandatory detention under 8 U.S.C. § 1226(c), *see* Return at 4-5, citing 8 C.F.R. §§ 1003.19, 1003.39, 236.1(c)(1), Respondents do not provide case or statutory support for their argument that Petitioner's detention changed administratively from 8 U.S.C. § 1226(c) to 8 U.S.C. § 1226(a) when Petitioner filed a Petition for Review with the Court of Appeals for the Ninth Circuit. Indeed, nothing in the text of 8 U.S.C. § 1226(c) limits its mandatory detention to administrative removal proceedings as opposed to judicial removal proceedings, and no part of 8 U.S.C. § 1226 distinguishes between administrative and judicial review of an IJ's order of removal. A review of the relevant statutory scheme, including the Code of Federal Regulations, reveals that aliens subject to discretionary detention under 8 U.S.C. § 1226(a) are eligible for release on bond and can appeal bond decisions to an IJ-two options statutorily unavailable to aliens subject to mandatory detention under 8 U.S.C. § 1226(c).*See*8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(c)(1), 236.1(d), 1003.19(a). If this Court were to adopt Respondents' arguments, however, such opportunities for release would be readily available to all aliens otherwise subject to mandatory detention despite clear language in 8 C.F.R. § 236.1(c)(1) precluding release of mandatorily detained aliens and the important policies behind

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

mandatory detention outlined in *Denmore v. Kim,* 538 U.S. at 528.

*\*5* After reviewing a number of cases, it is evident that courts view the continued detention of an alien after the alien has sought judicial review of an order of removal to remain statutorily authorized by the subpart of 8 U.S.C. § 1226 that authorized the detention before judicial review. For instance, in *Madrane v. Hogan,* 05-CV-2228, 2007 U.S. Dist. LEXIS 7970, \*4-6, 8 (M.D.Pa. Feb. 5, 2007), a removable alien was detained pursuant to 8 U.S.C. § 1226(c), and thereafter filed a Petition for Review with the United States Court of Appeals and a Petition for Writ of Habeas Corpus in the district court. In evaluating the alien's Petition for Writ of Habeas Corpus, the government argued and the district court agreed that the alien was "subject to pre-final order detention pursuant to § 1226(c)(1)(B)" while awaiting "a decision from the United States Court of Appeals on his petition for review of a final order of removal."*Id.* at 2-4, 8;*see also Marks v. Clark,* Case No. C06-1796-RSM, 2007 U.S. Dist. LEXIS 53026, \*8-11 (W.D.Wash. May 29, 2007) (alien is detained pursuant to 8 U.S.C. § 1226(c) during pendency of alien's Petition for Review in Ninth Circuit); *Singh v.. Clark,* 2007 U.S. Dist. LEXIS 50237, \*8-11 (W.D.Wash. Feb. 13, 2007) (same). Similarly, in *Gamez-Villagrana v. Gonzales,* No. 05-75441, 2007 U.S.App. LEXIS 18854 (9th Cir. Aug. 2, 2007)[FN3], the Court of Appeal for the Ninth Circuit evaluated an alien's Petition for Review and noted that the alien had been detained pursuant to 8 U.S.C. § 1226(c) during the time period that the Petition for Review was pending in the Court of Appeals. *Id.* at 3 ("We note that petitioner has now been in the custody of the Attorney General, pursuant to INA § 236(c) ... for more than three years.").

> FN3. Pursuant to Court of Appeals for the Ninth Circuit Rule 36-3, this unpublished Ninth Circuit opinion may be cited, but is not binding "precedent."

Some courts have concluded that an alien's de-

tention pending judicial review of an order of removal was pursuant to 8 U.S.C. § 1226(a).*See, e.g., Azeke v. Gonzales,* No. C-07-0709 MMC, 2007 U.S. Dist. LEXIS 33815, \*1-3 & fn. 4 (N.D.Cal. Apr. 25, 2007). However, those cases do not stand for the proposition that an alien's detention pending judicial review of an administrative order of removal changes administratively to 8 U.S.C. § 1226(a) as proposed by Respondents. Rather, those cases stand for the proposition that an alien subject to discretionary detention pursuant to 8 U.S.C. § 1226(a) before judicial review, remains subject to detention under 8 U.S.C. § 1226(a) during the pendency of judicial review. Accordingly, while it is true that the alien in *Azeke* was subject to discretionary detention pursuant to 8 U.S.C. § 1226(a) pending judicial review, it was not because the statutory basis for the detention changed administratively to 8 U.S.C. § 1226(a)-rather, it was because the alien in *Azeke* was not subject to mandatory detention under 8 U.S.C. § 1226(c) for the charge of overstaying his visa.*Azeke,* No. C-07-0709 MMC, 2007 U.S. Dist. LEXIS 33815, \*1-3 & fn. 4 (N.D.Cal. Apr. 25, 2007).

*\*6* DHS charged Petitioner with removability for being a criminal alien convicted of an aggravated felony, and Petitioner concedes that his convictions for burglary constitute aggravated felonies. *See*8 U.S.C. § 1227(a)(2)(A)(iii); 8 U.S.C. § 1101(a)(43) (g); Return, Ex. B. Accordingly, the Court concludes that Petitioner is subject to detention pursuant to 8 U.S.C. § 1226(c)(1)(B) until the Court of Appeals for the Ninth Circuit rules on Petitioner's pending Petition for Review and lifts the stay of deportation. *See Marks,* Case No. C06-1796-RSM, 2007 U.S. Dist. LEXIS 53026, \*8-11 (W.D. Wash. May 29, 2007; *see also*8 U.S.C. § 1231(a) (defining the removal period).

**II. Whether 8 U.S.C. § 1226(c) Authorizes Petitioner's Continued Detention For Over Four Years**

**A. Background**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2819732 (S.D.Cal.)
(Cite as: Slip Copy)

Page 6

In 2003, the United States Supreme Court held that mandatory detention of an alien pursuant to 8 U.S.C. § 1226(c) was a "constitutionally permissible" part of the removal process for the "limited period" necessary to complete removal proceedings. *Denmore v. Kim,* 538 U.S. at 526, 531. The Court distinguished *Zadvydas v. Davis,* a case in which the Supreme Court held that an alien subject to a final order of removal could not be indefinitely detained pursuant to 8 U.S.C. § 1231, on the grounds that (1) an alien detained for the limited period necessary to effect removal pursuant to 8 U.S.C. § 1226(c) was not detained indefinitely, and (2) mandatory detention pursuant to 8 U.S.C. § 1226(c) was generally of a much shorter duration than "post-removal-period detention" pursuant to 8 U.S.C. § 1231-"in the majority of cases [mandatory detention pursuant to 8 U.S.C. § 1226(c) ] lasts for less than the 90 days we considered presumptively valid in *Zadvydas."Denmore,* 538 U.S. at 527-31. With respect to detention pursuant to 8 U.S.C. § 1226(c), the Supreme Court cited statistics from the Executive Office for Immigration Review and noted that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal."*Denmore,* 538 U.S. at 530. Though the *Denmore* Court characterized constitutional detention pursuant to 8 U.S.C. § 1226(c) as "limited" and "brief," it did not explicitly limit the length of mandatory detention pursuant to 8 U.S.C. § 1226(c), and did not articulate a presumptively reasonable length of detention pursuant to 8 U.S.C. § 1226(c) as it did in *Zadvydas* for detention pursuant to 8 U.S.C. § 1231.[FN4]*Denmore,* 538 U.S. at 526, 531;*see also Madrane v. Hogan,* No. 1:05-CV-2228, 2007 U.S. Dist. LEXIS 7970, *9 (M.D.Pa. Feb. 7, 2007) (detailing *Denmore's* references to "brief" and "limited" detention pursuant to 8 U.S.C. § 1226(c)).

FN4. In *Zadvydas,* the United States Supreme Court held that a detention of six months or less pursuant to 8 U.S.C. § 1231

is presumptively reasonable. *Zadvydas,* 533 U.S. at 700-01.

Three years after *Denmore,* the Court of Appeals for the Ninth Circuit addressed a habeas petition filed by an alien who had been mandatorily detained pursuant to 8 U.S.C. § 1226(c) for "two years and four months." *Tijani v. Willis,* 430 F.3d 1241 (9th Cir.2005). Distinguishing *Denmore* on the grounds that the alien in *Denmore* conceded removability, the Court of Appeals concluded that 8 U.S.C. § 1226(c) applied to "expedited" removal proceedings, and remanded the petition to district court with instructions to grant the writ unless the Attorney General established that the alien was a flight risk or a danger to the community in a bail hearing before an IJ.*Tijani,* 430 F.3d at 1242. The Court of Appeals concluded that "two years and four months of process is not expeditious," and cited *Zadvydas* for the proposition that "it is constitutionally doubtful that Congress may authorize imprisonment of this duration for lawfully admitted resident aliens who are subject to removal."*Tijani,* 430 F.3d at 1242;*see also Zadvydas,* 533 U.S. at 690. The Court referenced the "year or more" of time necessary for judicial review to support the Court's granting of the writ. *Tijani,* 430 F.3d at 1242.

*7 Less than a year after *Tijani,* the Court of Appeals for the Ninth Circuit again addressed the scope of detention pursuant to general immigration statutes in *Nadarajah v. Gonzales,* 443 F.3d 1069 (9th Cir.2006). Rejecting the government's contention that *Denmore v. Kim* authorized indefinite detention, the Court of Appeals held that, "general immigration detention statutes do not authorize the Attorney General to incarcerate detainees for an indefinite period."*Nadarajah,* 443 F.3d at 1076, 1078, 1080-81. The Court further held that detention pursuant to general detention statutes must be

for a reasonable period, and only if there is a significant likelihood of removal in the reasonably foreseeable future. After a presumptively reasonable six-month detention, once the alien provides

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.

*Id.* at 1079.The *Nadarajah* Court held that a detention of nearly five years is "plainly unreasonable under any measure." *Id.* at 1080.

**B. The Parties' Arguments**

Citing *Zadvydas, Tijani,* and *Nadarajah,* Petitioner contends that his continued detention is indefinite and unreasonable, and that his removal is not significantly likely in the reasonably foreseeable future. Specifically, Petitioner argues that he is not likely to be removed because (1) his Petition for Review in the Ninth Circuit may well succeed, and (2) El Salvador is unlikely to issue travel documents for Petitioner because Petitioner was adopted by American citizens at age six months and moved to the United States. Petitioner contends that the sheer length of his detention without a bail hearing is unreasonable and violates due process, and at the very least, entitles him to a bail hearing before an IJ under *Tijani.*

Respondents contend that Petitioner's detention is not indefinite, and note that the majority of Petitioner's detention is attributable to Petitioner's filing of a Petition for Review in the Court of Appeals for the Ninth Circuit. Respondents contend that delays pending judicial review are not attributable to the government. Respondents further contend that *Nadarajah* controls the analysis, and argue that *Nadarajah* displaced *Tijani.*With respect to Petitioner's request for a bail hearing, Respondents contend that they afforded Petitioner three constitutionally adequate internal custody reviews.

**C. Analysis**

In light of *Tijani's* holding that 8 U.S.C. § 1226(c) authorizes only "expedited" removal proceedings, and *Nadarajah's* holding that detention

pursuant to general immigration statutes must be "reasonable" in the first instance, the Court must determine whether Petitioner Jess Mustanich's removal proceedings have been "expeditious," and whether his continued detention without a bail hearing is "reasonable." *Tijani,* 430 F.3d at 1242;*Nadarajah,* 433 F.3d at 1079-80. In *Denmore,* the United States Supreme Court held that a six month detention was authorized by 8 U.S.C. § 1226(c), and thus, at minimum, six months must be considered reasonable and expeditious. *Denmore,* 538 U.S. at 530-01. In *Tijani,* the Court of Appeals held that a removal proceeding of two years and four months was not "expeditious," and granted the petitioner a bail hearing. *Tijani,* 430 F.3d at 1242. Of the two years and four months at issue in *Tijani,* at least some of the time accrued while the petitioner's order of removal was before the Ninth Circuit. *Id.* In *Nadarajah,* the Court of Appeals held that a five year detention was "plainly unreasonable by any measure." *Nadarajah,* 443 F.3d at 1080.

**\*8** Respondents have detained Petitioner for more than four years pursuant to 8 U.S.C. § 1226(c). Seven months accrued during proceedings before the IJ, five-and-a-half months during proceedings before the BIA, and approximately thirty-six months during proceedings before the Court of Appeals for the Ninth Circuit.

In *Denmore,* the Supreme Court noted that removable aliens appeal to the BIA in only 15% of cases involving detention pursuant to 8 U.S.C. § 1226(c), and that where an alien appeals an order of removal to the BIA, mandatory detention generally lasts only five months. *Denmore,* 538 U.S. at 530. Here, Petitioner's proceedings before the IJ and the BIA lasted approximately 12 1/2 months, 7 1/2 months longer than in the typical case. Respondents do not set forth facts which establish that Petitioner is responsible for delay during the IJ and BIA proceedings. Accordingly, the length of detention during proceedings before the IJ and the BIA weighs against a finding that Petitioner's removal proceedings and detention have been "expeditious" and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"reasonable ." *Tijani,* 430 F.3d at 1242;*Nadarajah,* 433 F.3d at 1079-80.

The majority of Petitioner's detention accrued after Petitioner appealed the order of the BIA to the Court of Appeals for the Ninth Circuit. Respondents argue that this time is not attributable to Respondents because Petitioner appealed to the Ninth Circuit and filed a motion to stay deportation. Respondents contend that detention during judicial review of a BIA's decision is irrelevant in evaluating the length of an alien's detention in the context of a habeas petition. Petitioner contends that the sheer length of his detention during judicial review is relevant to whether his detention is reasonable.

Whether detention pending judicial review can be considered in assessing the reasonableness of an alien's mandatory detention pursuant to 8 U.S.C. § 1226(c), and if so, how it should be considered, is a question that has not been explicitly addressed by either the United States Supreme Court or the Court of Appeals for the Ninth Circuit. However, the Court of Appeals for the Ninth Circuit referenced the period of judicial review which had elapsed and that which was yet to come in support of its holding in *Tijani* that the alien's removal proceedings were not expeditious, and it is apparent that the *Tijani* Court included at least some time which accrued during judicial review in its conclusion that the petitioner had been detained for two years and four months. *Tijani,* 430 F.3d at 1242.[FN5]As in *Tijani,* some district courts have considered detention pending judicial review in determining whether 8 U.S.C. § 1226(c) authorized a prolonged detention. *See Martinez-Herrera v. Crawford,* No. CIV 07-0267-PHX-NVW (DKD), 2007 U.S. Dist. LEXIS 53334, *6-8 (D.Ariz. Jun. 20, 2007) (noting that the Ninth Circuit considered detention pending judicial review in evaluating the detention in *Tijani*);*Singh v. Crawford,* No. CV 06-2194-PHX-MHM (GEE), Doc. # 22 at 4 (D.Ariz. Apr. 13, 2007) adopted by *Singh v. Crawford,* No. CV 06-2194-PHX-MHM (GEE), 2007 U.S. Dist. LEXIS 57249 (D.Ariz. Aug. 3, 2007) (considering 2

years in which alien was detained pending judicial review); *but see Singh v. Gonzales,* No. CV 06-135-PHX-JAT, 2007 U.S. Dist. LEXIS 27837, *6 (D.Ariz. Apr. 13, 2007) (noting that petitioner's continued custody is the result of his own actions in appealing to the Ninth Circuit). After reviewing the relevant case law, and particularly *Tijani,* the Court concludes that it can and must consider periods of detention which accrue pending judicial review in determining whether removal proceedings and detention pursuant to 8 U.S.C. § 1226(c) are expeditious and reasonable.

> FN5. In *Gamez-Villagrana v. Gonzales,* No. 05-75441, 2007 U.S.App. LEXIS 18854, *3-4 (9th Cir. Aug. 2, 2007), the Court of Appeal noted with approval the consideration of periods of detention which accrue during proceedings before the Court of Appeal.

**\*9** The Court finds unpersuasive Respondents' argument that because Petitioner appealed to the Court of Appeals for the Ninth Circuit and sought a stay of removal, the period of Petitioner's detention which accrued pending judicial review should not be considered. As noted above, other courts, including the Court of Appeal for the Ninth Circuit in *Tijani,* have considered periods of detention which accrue pending judicial review in assessing the merits of a habeas petition. *Tijani,* 430 F.3d at 1242;*see also Ly v. Hanson,* 351 F.3d 263, 272 (6th Cir.2002) (holding that the entire removal process, and not just the original deportation hearing, is subject to the constitutional requirement of reasonableness). In addition, even if the court were permitted to ignore periods of detention which accrue during judicial appeal under certain circumstances, the court would still be required to consider those periods where, as here, (1) a petitioner asserts a "substantial" non-frivolous claim to citizenship, *Tijani,* 430 F.3d at 1247 (Tashima, J., concurring), (2) a petitioner has not frivolously delayed administrative or appellate proceedings, and (3) a respondent delays the proceedings on appeal. Here, Peti-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2819732 (S.D.Cal.)
(Cite as: Slip Copy)

tioner has at least a "substantial" claim to citizenship, especially considering that he was adopted by American citizens at age six-months and moved to the United States, and it is evident that Petitioner has not delayed the administrative or judicial removal proceedings. Respondents, on the other hand, twice failed to file the administrative record when ordered to do so by the Court of Appeals, and once sought a three month extension of time to file the record. Return, Ex. H. Though originally required to file the administrative record on or before October 26, 2004, Respondents did not file the record until January 28, 2005-three months after it was originally due. Return, Ex. H. Respondents also repeatedly delayed in responding to the motion for a stay of deportation, and not only failed to comply with Court of Appeals' orders requiring a response to the motion to stay, but sought, and were granted, a three month extension to file a response to the motion which they then failed to comply with. Return, Ex. H. As noted by the Court of Appeals for the Sixth Circuit, "although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take. The mere fact that an alien has sought relief from deportation does not authorize the INS to drag its heels .... " *Ly,* 351 F.3d at 272. On this record, there is no doubt that the Court must consider the periods of Petitioner's detention which accrued while Petitioner appealed to Court of Appeal for the Ninth Circuit.

Notwithstanding the length of Petitioner's detention, Respondents cite *Nadarajah* and argue that Petitioner should not be released or afforded a bail hearing because his "removal remains reasonably foreseeable." Return at 6; *see also Nadarajah,* 433 F.3d 1078. However, this Court cannot determine when the Court of Appeals for the Ninth Circuit might adjudicate Petitioner's Petition for Review, and even if the Court of Appeals were to adjudicate the Petition, it is not clear that the order of the BIA would be affirmed as opposed to reversed and remanded. As noted above, Petitioner has at least a "substantial" claim that he should be considered an

American citizen, and the Court of Appeals for the Ninth Circuit has recently remanded a similar case to district court and held that "the Constitution is violated when a person with a non-frivolous claim to U.S. citizenship is deported without receiving a judicial determination of that claim."*Gamez-Villagrana v. Gonzales,* No. 05-75441, 2007 U.S.App. LEXIS 18854, *2 (9th Cir. Aug. 2, 2007), citing *Rivera v. Ashcroft,* 394 F.3d 1129, 1140 (9th Cir.2005). Furthermore, while *Nadarajah* held that the likelihood of removal was relevant, it also held that a detention had to be "reasonable" in the first instance. *Nadarajah,* 443 F.3d at 1079.

**\*10** As noted by the United States Supreme Court in *Zadvydas,* when determining the reasonableness of an alien's detention, a court should consider that "as the period of ... confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."*Zadvydas,* 533 U.S. at 701. Here, Petitioner has been in Respondents custody for well over 4 years, during which time Petitioner's administrative proceedings took longer than usual, and Respondents significantly delayed in the Court of Appeals. The Court has been unable to find a single case in which a court upheld either a more than four year mandatory detention pursuant to 8 U.S.C. § 1226(c) as reasonable, or a removal proceeding of the same length as expeditious. The Court also concludes that Petitioner has a non-frivolous claim to citizenship, which may warrant further judicial proceedings on remand. On this record, and particularly given the length of Petitioner's detention, the Court concludes that Petitioner's removal proceedings are not "expeditious," and his continued detention without bail is not "reasonable." *See Tijani,* 430 F.3d at 1242 (two year and four month removal proceeding not expeditious); *Nadarajah,* 433 F.3d at 1079-80 (five year detention plainly unreasonable); *see also Singh v. Crawford,* No. CV 06-2194-PHX-MHM (GEE), 2007 U.S. Dist. LEXIS 57249 (D.Ariz. Aug. 3, 2007) (2 1/2 year detention, some of which accrued during judicial review, unreasonable under *Tijani* );*Martinez-Herrera v. Crawford,* No. CIV

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2819732 (S.D.Cal.)
**(Cite as: Slip Copy)**

07-0267-PHX-NVW (DKD), 2007 U.S. Dist. LEX-
IS 53334, *6-7 (D.Ariz. Jun. 20, 2007) (21 month
detention unreasonable under *Tijani* );*Abeogba v.
ICE,* No. CV 05-2247-PHX-MHM (LOA), 2006
U.S. Dist. LEXIS 51319 (D.Ariz. July 18, 2006) (5
year detention unreasonable). As noted in *Tijani,* it
is "constitutionally doubtful that Congress may au-
thorize imprisonment of this duration for lawfully
admitted resident aliens who are subject to remov-
al."*Tijani,* 430 F.3d at 1242.

### III. Bail Hearing

Petitioner contends that his unreasonable de-
tention entitles him to release. However, consistent
with *Tijani,* the government should be given the op-
portunity to establish that Petitioner is a flight risk
or a danger to the community in a bail hearing be-
fore an IJ. *Tijani,* 430 F.3d at 1242;*see also Singh
v. Crawford,* No. CV 06-2194-PHX-MHM (GEE),
2007 U.S. Dist. LEXIS 57249 (D.Ariz. Aug. 3,
2007) (requiring bail hearing before release); *Mar-
tinez-Herrera v. Crawford,* No. CIV
07-0267-PHX-NVW (DKD), 2007 U.S. Dist. LEX-
IS 53334, *6-7 (D.Ariz. Jun. 20, 2007) (same);
*Abeogba v. ICE,* No. CV 05-2247-PHX-MHM
(LOA), 2006 U.S. Dist. LEXIS 51319 (D.Ariz. July
18, 2006) (same).

### CONCLUSION

The Court concludes that Petitioner's more than
four year detention is unreasonable and his removal
proceedings not "expeditious." Accordingly, Peti-
tioner's Petition for Writ of Habeas Corpus is
hereby granted in part and denied in part.

**\*11 IT IS HEREBY ORDERED** that:
(1) Petitioner's request for release is **DENIED.**
(2) Petitioner's request for a bail hearing before
an IJ is **GRANTED.**
(3) Respondents shall provide Petitioner with a
bail hearing before an IJ within 10 days of this Or-
der.

**IT IS SO ORDERED.**

S.D.Cal.,2007.
Mustanich v. Gonzales
Slip Copy, 2007 WL 2819732 (S.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

504 F.Supp.2d 887
504 F.Supp.2d 887
**(Cite as: 504 F.Supp.2d 887)**

Page 1

C
Martinez v. Gonzales
C.D.Cal.,2007.

United States District Court,C.D. Califor-
nia,Western Division.
Victor MARTINEZ, Petitioner,
v.
Alberto GONZALES, et al., Respondent.
**No. CV 06-7609 TJH AJW.**

Aug. 17, 2007.

**Background:** Alien, a native and citizen of
Ecuador, petitioned for a writ of habeas corpus,
challenging his detention by the Bureau of Immig-
ration and Customs Enforcement of the Department
of Homeland Security (ICE) for over five years
pending removal proceedings.

**Holdings:** The District Court, Hatter, J., adopt-
ing the report and recommendation of Wistrich,
United States Magistrate Judge, held that:

(1) the court had jurisdiction to adjudicate the
petition;

(2) detention of the alien was governed by a
statute which authorized the Attorney General to
detain aliens pending a determination of removabil-
ity;

(3) detention for over five years was excessive
and unauthorized by that statute; and

(4) there was no significant likelihood of re-
moval in the reasonably foreseeable future, so as to
make continued detention reasonably necessary to
bring about the alien's removal.

Petition granted.

West Headnotes

**[1] Habeas Corpus 197 ☞521**

197 Habeas Corpus
   197II Grounds for Relief; Illegality of Restraint
      197II(C) Relief Affecting Particular Persons
or Proceedings
         197k521 k. Aliens. Most Cited Cases
REAL ID Act of 2005 did not divest the district
court of jurisdiction over a habeas petition brought
by an alien challenging his detention by the Bureau
of Immigration and Customs Enforcement of the
Department of Homeland Security (ICE) for over
five years pending removal proceedings. 28
U.S.C.A. § 2241.

**[2] Habeas Corpus 197 ☞521**

197 Habeas Corpus
   197II Grounds for Relief; Illegality of Restraint
      197II(C) Relief Affecting Particular Persons
or Proceedings
         197k521 k. Aliens. Most Cited Cases
Although the REAL ID Act of 2005 eliminated dis-
trict court jurisdiction over habeas corpus petitions
challenging orders of removal, district courts retain
subject matter jurisdiction over habeas petitions
challenging the legality of an alien's detention. 28
U.S.C.A. § 2241.

**[3] Habeas Corpus 197 ☞282**

197 Habeas Corpus
   197I In General
      197I(C) Existence and Exhaustion of Other
Remedies
         197k275 Particular Issues and Problems
            197k282 k. Aliens. Most Cited Cases
Government's appeal from an order granting a pre-
liminary injunction did not deprive the district court
of jurisdiction to adjudicate the merits of an alien's
habeas petition challenging his detention by the
Bureau of Immigration and Customs Enforcement
of the Department of Homeland Security (ICE) for
over five years pending removal proceedings. 28
U.S.C.A. § 2241.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

504 F.Supp.2d 887
504 F.Supp.2d 887
(Cite as: 504 F.Supp.2d 887)

**[4] Federal Courts 170B ⬅➡681.1**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(F) Effect of Transfer and Super-
sedeas or Stay
         170Bk681 Effect of Transfer of Cause or
Proceedings Therefor
            170Bk681.1 k. In General. Most Cited
Cases
As a general rule, the filing of a notice of appeal is
an event of jurisdictional significance in that it con-
fers jurisdiction on the appellate court and divests
the district court of its control over those aspects of
the case involved in the appeal.

**[5] Federal Courts 170B ⬅➡682**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(F) Effect of Transfer and Super-
sedeas or Stay
         170Bk681 Effect of Transfer of Cause or
Proceedings Therefor
            170Bk682 k. Interlocutory or Defect-
ive Appeal. Most Cited Cases
Appeal from an order granting or denying a prelim-
inary injunction does not divest the district court of
jurisdiction to proceed with the action on the mer-
its; the merits are not matters involved in the ap- peal.

**[6] Aliens, Immigration, and Citizenship 24 ⬅➡
466**

24 Aliens, Immigration, and Citizenship
   24VI Arrest, Detention, Supervision, and Parole
      24VI(D) Detention, Supervision, and Parole
         24k464 Detention Pending Removal Pro-
ceeding
            24k466 k. Time Limitations. Most
Cited Cases
Detention of an alien for over five years pending
removal proceedings was governed by a statute
which authorized the Attorney General to detain
aliens pending a determination of removability, and

made detention mandatory if the alien committed
criminal offenses falling within its reach, rather
than a statute that authorized the Attorney General
to detain aliens during, and in certain circumstances
beyond, a "removal period," but provided that if a
court ordered a stay of removal, the removal period
did not begin until the date of the court's final or-
der; that date had not arrived, and thus, the removal
period referred to by the latter statute had not be-
gun. Immigration and Nationality Act, § 236(c), 8
U.S.C.A. § 1226(c); Illegal Immigration Reform
and Immigrant Responsibility Act of 1996, §
305(a)(1)(B)(ii), 8 U.S.C.A. § 1231(a)(1)(B)(ii).

**[7] Aliens, Immigration, and Citizenship 24 ⬅➡
466**

24 Aliens, Immigration, and Citizenship
   24VI Arrest, Detention, Supervision, and Parole
      24VI(D) Detention, Supervision, and Parole
         24k464 Detention Pending Removal Pro-
ceeding
            24k466 k. Time Limitations. Most
Cited Cases
Detention of an alien by the Bureau of Immigration
and Customs Enforcement of the Department of
Homeland Security (ICE) for over five years
pending removal proceedings was excessive and
unauthorized by the controlling statute, which au-
thorized the Attorney General to detain aliens
pending a determination of removability and made
detention mandatory if the alien committed crimin-
al offenses falling within its reach, despite a claim
that the alien had "acted to prevent his removal" by
filing two petitions for review and by obtaining a
stay of removal. Immigration and Nationality Act, §
236(c), 8 U.S.C.A. § 1226(c).

**[8] Aliens, Immigration, and Citizenship 24 ⬅➡
466**

24 Aliens, Immigration, and Citizenship
   24VI Arrest, Detention, Supervision, and Parole
      24VI(D) Detention, Supervision, and Parole
         24k464 Detention Pending Removal Pro-
ceeding

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

504 F.Supp.2d 887
504 F.Supp.2d 887
(Cite as: 504 F.Supp.2d 887)

Page 3

24k466 k. Time Limitations. Most Cited Cases
There was no significant likelihood of removal of an alien in the reasonably foreseeable future, so as to make his continued detention for more than five years reasonably necessary to bring about his removal, and thus, continued detention was not statutorily authorized and he was entitled to release; even though his petition for review at some point would be adjudicated, there was no timetable or date for disposition of his petition or for effectuating his removal if he lost. Immigration and Nationality Act, § 236(c), 8 U.S.C.A. § 1226(c).

*889 Ahilan T. Arulanantham, Peter J. Eliasberg, Ranjana Natarajan, Los Angeles, CA, Cecillia D. Wang, Monica M. Ramirez, San Francisco, CA, Jayashri Srikantiah, Stanford, CA, Judy Rabinovitz, New York City, for Petitioner.
Robert I. Lester, Los Angeles, CA, for Respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

HATTER, District Judge.
Pursuant to 28 U.S.C. § 636(b)(1)(C), the Court has reviewed the entire record in this action, the attached Report and Recommendation of Magistrate Judge ("Report"), and the objections thereto. Good cause appearing, the Court concurs with and adopts the findings of fact, conclusions of law, and recommendations contained in the Report after having made a *de novo* determination of the portions to which objections were directed.

## IT IS SO ORDERED.

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

WISTRICH, United States Magistrate Judge.
Petitioner, a native and citizen of Ecuador, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Petition"). Petitioner is challenging his detention by the Bureau of Immigration and Customs Enforcement of the Department of Homeland Security ("ICE") for over four years while removal proceedings have been pending against him. Respondents filed an amended answer to the petition ("Answer"), and petitioner filed a traverse ("Traverse").

### Proceedings

The procedural history of this case is lengthy, and it is unnecessary to describe that history in full here. [*See* Petition 5-9; Answer 2-10]. Briefly summarized, the procedural facts relevant to this petition are as follows.

Petitioner was admitted to the United States as a lawful permanent resident on July 19, 1970, at age 14, and he has resided in the Los Angeles area for over 36 years. [Petition 5 & Ex. 1; Answer, Ex. 1]. Petitioner has multiple criminal convictions. [Petition 5; Answer 3 & Ex. 1]. On or about September 4, 2002, petitioner was taken into custody by the Immigration and Naturalization Service ("INS").[FN1] Based on convictions for possession of a controlled substance in 1987, second-degree burglary in 1996, and petty theft in 2001, petitioner was charged with removability for convictions of crimes involving moral turpitude and an aggravated felony. [Petition 5, 7-8; Answer 4 & Ex. 4].

> FN1. The INS was abolished on March 1, 2003, and its functions were transferred to the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub.L. No. 107-296, § 471, 116 Stat. 2135, 2205 (2002). References to ICE include the INS.

On November 1, 2002, shortly after petitioner was taken into custody by ICE, an immigration judge ("IJ") denied petitioner's application for release on bond. [Petition 5 & Ex. 2].

On November 5, 2002, an IJ ordered petitioner removed to Ecuador. [Petition 8; Answer 4 & Ex. 7]. The BIA summarily affirmed the IJ's removal order on July 30, 2003. [Petition 8; Answer 4 & Ex. 8].

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

504 F.Supp.2d 887
504 F.Supp.2d 887
(Cite as: 504 F.Supp.2d 887)

Petitioner filed a pro se petition for review of his removal order in the Ninth Circuit on August 22, 2003. A stay of *890 removal was issued. The Ninth Circuit dismissed the petition for lack of jurisdiction, and the United States Supreme Court denied his petition for certiorari. The stay of removal was lifted on March 31, 2005. [Petition 8 n. 5; Answer 4-5].

On October 28, 2004, after petitioner had been detained for more than two years, ICE conducted a "file custody review" without a hearing. ICE issued a decision continuing petitioner's detention on December 1, 2004. About a year later, a second file custody review was conducted. On December 8, 2005, after petitioner had spent more than three years in ICE custody, ICE issued another decision continuing petitioner's detention. [Petition 6 & Exs.3-6; Answer 10 & Exs. 43, 45].

Petitioner challenged his removal order in a pro se habeas petition filed in the United States District Court for the Southern District of California (where he was incarcerated) on March 7, 2005.[FN2] [Petition 8; Answer 6 & Exs. 22-23]. The district court issued a stay of removal on March 23, 2005 "pending the final determination of this matter," and it denied the government's motion to vacate the stay. [Answer 6-7, Ex. 25 at 154, Ex. 26]. On June 30, 2005, the district court held that it lacked subject matter jurisdiction over the petition pursuant to the Real ID Act of 2005.[FN3] It ordered the petition transferred to the Ninth Circuit Court of Appeals, where it was filed and remains pending. [See Martinez v. Gonzales, No.05-73975 (9th Cir. filed July 5, 2005); Answer, Ex. 28]. On November 21, 2005, the Ninth Circuit granted petitioner's request for a stay of removal, and the stay has not been vacated. [Answer, Ex. 28 at 164].

FN2.

FN3. On May 11, 2005, the REAL ID Act of 2005, Pub.L. 109-13, Div. B, 119 Stat. 231 (2005) was signed into law. Among other things, the REAL ID Act amended

section 242 of the INA, 8 U.S.C. § 1252(a)(5), so as to "eliminate[ ] district court habeas corpus jurisdiction over orders of removal and vest[ ] jurisdiction to review such orders exclusively in the courts of appeals." *Puri v. Gonzales,* 464 F.3d 1038, 1041 (9th Cir.2006)(citing *Martinez-Rosas v. Gonzales,* 424 F.3d 926, 928-929 (9th Cir.2005)).

On June 27, 2005, petitioner filed a pro se habeas petition challenging his detention in the United States District Court for the Southern District of California (where he was still incarcerated). The district court erroneously held that it lacked jurisdiction and transferred the petition to the Ninth Circuit Court of Appeals, which remanded the petition back to the district court in an order filed January 30, 2006. [Petition 7; Answer 7 & Exs.29-31]. The district court did not reach the merits of petitioner's challenge to the legality of his detention because, after his petition was transferred back to the district court, petitioner's motion for voluntary dismissal was granted. [See Martinez v. Gonzales, No. CV05-1307 JM (AJB) (S.D. Cal. filed October 17, 2006); Answer 7 & Exs. 29, 32]. Petitioner voluntarily dismissed that petition because he had joined as a co-petitioner in a habeas petition filed in this court challenging prolonged immigrant detention. That case was dismissed without prejudice to petitioner as improperly joined. [See Petition 7 & n. 4; see also Mussa v. Gonzales, No.CV-062749 TJH (JTL) (C.D.Cal. October 17, 2006) ].

Having obtained counsel, petitioner filed this petition challenging the legality of petitioner's detention on November 30, 2006. Petitioner filed a motion for a preliminary injunction, which was granted by District Judge Hatter on January 3, 2007. He ordered that petitioner be "afforded an individual hearing before an immigration judge concerning whether his prolonged detention is justified" and that petitioner *891 be "released on reasonable conditions unless the government shows by clear and convincing evidence that [he] presents a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

sufficient danger or risk of flight to justify his detention in light of how long he has been detained already and the likelihood of his case being finally resolved in favor of the government in the reasonably foreseeable future." [Order filed January 3, 2007].

Pursuant to District Judge Hatter's order, a bond hearing was conducted before IJ D.D. Sitgraves, who ordered petitioner released on $10,000 bond in a written decision dated February 8, 2007. [Petitioner's Supplemental Memorandum filed May 21, 2007 ("Petitioner's Suppl. Mem."), Ex. B]. The IJ found that the government "has failed to justify [petitioner's] prolonged detention. The government has failed to meet their burden of proof establishing by clear and convincing evidence that [petitioner] presents a sufficient danger or flight risk." [Petitioner's Suppl. Mem., Ex. B at 5]. The IJ concluded that he could not "reasonably speculate" about the likelihood of petitioner's case being finally resolved in favor of the government in the reasonably foreseeable future because he was only "provided with speculation during this hearing as to how long it would take" to finally resolve petitioner's pending petitions before the Ninth Circuit. [Petitioner's Suppl. Mem., Ex. B at 5].

Petitioner posted bond and was released on February 12, 2007. [Petitioner's Suppl. Mem., Ex. B; Joint Status Report filed February 26, 2007 at 1]. The government has appealed that order to the Board of Immigration Appeals ("BIA"), where it remains pending. [Petitioner's Suppl. Mem. 1]. In addition, the government filed an appeal in the Ninth Circuit from this court's order granting petitioner's request for a preliminary injunction. That appeal is pending. [See *MARTINEZ v. GONZALES*, No.07-55332, 2007 WL 1508308 (9th Cir.2007) ].

In their joint status report, the parties state that there are no factual disputes and that two legal issues remain to be resolved. [Joint Status Report filed February 26, 2007 at 1-2]. The first legal issue is whether petitioner was detained under 8 U.S.C. § 1226, as petitioner contends, or under 8 U.S.C § 1231, as respondents contend. The second legal issue is whether petitioner must be released immediately, as petitioner contends, or alternatively must be given either a hearing before an IJ or, as respondents contend, a paper "file custody review" to determine whether his detention is justified. The parties jointly requested that this court adjudicate the merits of the habeas petition. [Joint Status Report filed February 26, 2007 at 2].

**Discussion**

**Subject matter jurisdiction**

Before addressing the disputed issues identified by the parties, the court must consider whether it has jurisdiction to reach the merits of the petition. *See Nadarajah v. Gonzales,* 443 F.3d 1069, 1075 (9th Cir.2006)(holding that although neither party had raised the question of the court's jurisdiction to consider a § 2241 petition, the court "was obligated to consider it *sua sponte* ")(citing *Justices of Boston Mun. Court v. Lydon,* 466 U.S. 294, 300-302, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984)).

**(1) Applicability of REAL ID Act of 2005**

[1][2] The first jurisdictional issue presented in this case is whether the REAL ID Act of 2005 divests this court of jurisdiction over the petition. Although the REAL ID Act of 2005 eliminated district court jurisdiction over habeas corpus petitions challenging orders of removal, *see* **\*892** *Puri,* 464 F.3d at 1041, district courts retain subject matter jurisdiction over section 2241 petitions challenging the legality of an alien's detention. *See Nadarajah,* 443 F.3d at 1075 ("By its terms, the jurisdiction-stripping provision [of the REAL ID Act] does not apply to federal habeas corpus petitions that do not involve final orders of removal."). The Ninth Circuit so held when it granted the government's motion to remand back to the United States District Court for the Southern District of California a section 2241 petition petitioner filed in that court challenging the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

504 F.Supp.2d 887
504 F.Supp.2d 887
(Cite as: 504 F.Supp.2d 887)

legality of his detention by ICE. *See Martinez-Jaramillo v. Gonzales,* No.05-75161 (9th Cir. January 20, 2006)(unpublished order); Answer, Ex. 31. In *Martinez-Jaramillo,* the Ninth Circuit held that the district court erred in transferring the petition to the court of appeals pursuant to the REAL ID Act of 2005 because the petition "challenged [petitioner's] detention, not a final order of removal." Answer, Ex. 31 (citing *Zadvydas v. Davis,* 533 U.S. 678, 687-688, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001)(holding that " § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to" detention after the 90-day "removal period" defined in 8 U.S.C. 1231(a)(1)) and *INS v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001)(holding that habeas jurisdiction under section 2241 was not repealed by the Antiterrorism and Effective Death Penalty Act of 1996 or the Illegal Immigration Reform and Immigrant Responsibility Act of 1996)).

Accordingly, this court has jurisdiction under section 2241 to consider petitioner's challenge to the lawfulness of his detention by ICE.

**(2) Effect of appeal from order granting preliminary injunction**

[3][4][5] The second jurisdictional issue presented by this case is the effect of the government's appeal from the order granting a preliminary injunction on this court's jurisdiction to adjudicate the merits of the petition. As a general rule, "[t]he filing of a notice of appeal is an event of jurisdictional significance-it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) (per curiam); *see G & M, Inc. v. Newbern,* 488 F.2d 742, 746 (9th Cir.1973)("We have held that jurisdiction over a case is immediately transferred to the court of appeals upon the filing of a sufficient notice of appeal 'with respect

to any matters involved in the appeal.' ") (quoting 9 J. Moore, Federal Practice ¶ 203.11 (2d ed.1971)) (emphasis added). However, "an appeal from an order granting or denying a preliminary injunction does not divest the district court of jurisdiction to proceed with the action on the merits-I. e., the merits are not matters 'involved in the appeal.' " *G & M,* 488 F.2d at 746; *see Webb v. GAF Corp.,* 78 F.3d 53, 55 (2d Cir.1996)(per curiam)(holding that although the filing of a notice of appeal ordinarily divests the district court of jurisdiction over issues decided in the order being appealed, the appeal of a preliminary injunction did not divest the district court of jurisdiction to enter a permanent injunction).

Accordingly, the government's appeal of the preliminary injunction order does not preclude this court from issuing a ruling on the merits of the petition, as both parties have requested.

**Controlling detention statute**

[6] Petitioner contends that his detention is governed by 8 U.S.C. § 1226. [*See* Petition 2-3 & n. 3; Traverse 2; Joint Status Report 1].Section 1226(a) states that "an alien may be arrested and detained pending a decision on whether the *893 alien is to be removed from the United States," and that the Attorney General may elect to continue to detain the arrested alien or release the alien subject to certain conditions. *See* 8 U.S.C. § 1226(a) & (c). Section 1226(c)(1)(B) provides that where an alien "is deportable by reason of having committed" two or more crimes involving moral turpitude under 8 U.S.C. § 1227(a)(2)(A)(ii) or an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii), "the Attorney General shall take" the alien into custody. Because petitioner is prima facie removable by virtue of his criminal convictions, the applicable provision is section 1226(c).

The government contends that petitioner's detention is controlled by 8 U.S.C. § 1231(a). [*See* Answer 10-11; Joint Status Report 1].Section

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1231(a) states that except as otherwise provided in that section, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')....[¶] During the removal period, the Attorney General shall detain the alien." 8 U.S.C. § 1231(a)(1)(A) & (C). Aliens who are removable by reason of having committed two or more crimes of moral turpitude or an aggravated felony, or who have been "determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period ...."8 U.S.C. § 1231(a)(6). If, however, "the removal order is judicially reviewed and if a court orders a stay of the removal of the alien," the removal period begins on "the date of the court's final order." 8 U.S.C. § 1231(a)(1)(B)(ii).

Petitioner's position is correct. It is undisputed that a petition for review of petitioner's final order of removal is pending before the Ninth Circuit, and that a stay of removal remains in effect. Section 1231 authorizes the Attorney General to detain aliens during, and in certain circumstances beyond, the "removal period," but if a court orders a stay of removal, the removal period does not begin until "the date of the court's final order." 8 U.S.C. § 1231(a)(1)(B)(ii). Because that date has not arrived, the removal period has not begun, and therefore section 1231 does not govern petitioner's detention.

Section 1226, on the other hand, authorizes the Attorney General to detain aliens pending a determination of removability, and it makes detention mandatory if the alien has committed criminal offenses that fall within its reach. Where, as here, the statutory removal period has not yet begun, an alien who has been charged with removability as a criminal alien is detained under section 1226. *See Tijani v. Willis,* 430 F.3d 1241, 1242 (9th Cir.2005)(reversing and remanding with instructions to release the petitioner, who been detained pending appeal for two years and eight months under section 1226(c), on bail unless an IJ determined

after a hearing that the government had proved that the petitioner was flight risk or a danger to the community); *see also Tijani,* 430 F.3d at 1243-1250 & n. 7 (Tashima, J., concurring)(noting that the petitioner was detained under section 1226 because "this court has stayed his removal pending its review of the BIA's decision" and therefore the petitioner "has not entered his 90-day removal period under"section 1231(a)); *Kothandaraghipathy v. Department of Homeland Sec.,* 396 F.Supp.2d 1104, 1107 (D.Ariz.2005)(holding that because the Ninth Circuit had granted the petitioner a stay of removal, his current detention is pursuant to the pre-removal order detention statute, 8 U.S.C. § 1226, rather than the post-removal order detention statute, 8 U.S.C. § 1231).[FN4] Accordingly,*894 the issue is whether petitioner is entitled to relief from his detention pursuant to section 1226, and if so, the nature of that relief.[FN5]

> FN4. This conclusion also is consistent with the Ninth Circuit's order affirming the dismissal of a prior habeas petition filed by petitioner alleging that the IJ denied him due process by failing properly to consider mitigating evidence at his bail hearing. *See Martinez‐Jaramillo v. Thompson,* No. 03-56282, 2005 WL 96538, at *1 (9th Cir.2005). The Ninth Circuit declined to decide whether petitioner was held under section 1226(c) or section 1231(a)(2). It also declined to decide whether the recall of its mandate dismissing petitioner's petition for direct review of his order of removal pending resolution of his petition for writ of certiorari "stalled" the beginning of the removal period. It held, however, that even if the Attorney General's authority to detain petitioner under section 1231(a)(2) had been "withdrawn" on account of the recall of the mandate, petitioner was still subject to mandatory detention under section 1226(c). *Martinez‐Jaramillo,* 2005 WL 96538, at *2-3.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN5. This conclusion obviates the need to consider petitioner's contention that his detention is unlawful even if section 1231 governs his detention.

## Legality of petitioner's detention under section 1226(c)

[7] Relying on the principles articulated by the Ninth Circuit in *Nadarajah*, petitioner argues that he is entitled to immediate release from detention because "his prolonged and indefinite detention" is not authorized by section 1226(c). In *Nadarajah*, the Ninth Circuit ordered released from detention an alien who had been detained pursuant to "the general immigration detention statutes," 8 U.S.C. §§ 1225(b)(1)(B)(ii) and (b)(2)(A), for more than five years pending a final determination of removability.[FN6] The petitioner remained in detention "without any established time line for a decision on when he may be released from detention." *Nadarajah*, 443 F.3d at 1075-76.

> FN6. In pertinent part, section 1225(b)(1)(B)(ii) states that "[i]f the [asylum] officer determines at the time of the interview [upon arrival in the United States] that an alien has a credible fear of persecution ..., the alien shall be detained for further consideration of the application for asylum," and section 1225(b)(2)(A) states that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under 8 U.S.C. § 1229a."

"[C]onsistent with the construction given by the Supreme Court to similar statutes," the Ninth Circuit held that "the general immigration detention statutes do not authorize the Attorney General to incarcerate detainees for an indefinite period." *Nadarajah*, 443 F.3d at 1078 (citing *Zadvydas*, 533 U.S. at 701, 121 S.Ct. 2491).[FN7] Rather,

FN7. In *Zadvydas*, the Supreme Court reasoned that a statute permitting indefinite detention of an alien would raise a serious constitutional problem under the Fifth Amendment's Due Process Clause. Applying the constitutional avoidance doctrine in order to avoid this potential problem, *Zadvydas* held that § 1231(a)(6), read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal and does not permit indefinite detention. *Zadvydas* then concluded that once removal is no longer reasonably foreseeable, continued detention is no longer authorized by [§ 1231(a)(6) ]....[¶][U]nder *Zadvydas*, a presumptively reasonable period of post-removal detention is limited to six months, and that after this period expires, an alien must be released if there is no significant likelihood of removal in the reasonably foreseeable future.

*Tuan Thai v. Ashcroft*, 366 F.3d 790, 794 (9th Cir.2004)(internal quotation marks and alteration omitted)(citing *Zadvydas*, 533 U.S. at 689-690, 699, 121 S.Ct. 2491).

the detention must be for a reasonable period, and only if there is a "significant likelihood of removal in the reasonably foreseeable future. After a presumptively*895 reasonable six-month detention, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."

*Nadarajah*, 443 F.3d at 1079-80 (quoting *Zadvydas*, 533 U.S. at 701, 121 S.Ct. 2491).

The Ninth Circuit concluded that its statutory construction analysis in *Nadarajah* was "bolstered by considering the immigration statutes as a whole," and in particular by reference to Patriot Act provisions authorizing the detention of suspected terrorists or "other carefully defined categories" of aliens for more than six months, subject to specific limitations and procedural protections not provided for in the "general immigration detention statutes."

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

504 F.Supp.2d 887
504 F.Supp.2d 887
(Cite as: 504 F.Supp.2d 887)

*Nadarajah,* 443 F.3d at 1078-1080.

Characterizing "the six-month period as the touchstone of reasonableness," the Ninth Circuit observed that "the Supreme Court has given further guidance as to what it considers to be a 'reasonable' length of detention for aliens" convicted of a crime and detained under section 1226(c) pending a determination of removability. *Nadarajah,* 443 F.3d at 1080 (citing *Demore v. Kim,* 538 U.S. 510, 513, 529-531, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003)). In *Demore,* "the Supreme Court held that the government could detain aliens who had been convicted of a crime for 'the brief period necessary for their removal proceedings,' " and although the alien in that case "had been detained for over six months, which was 'somewhat longer than average,' " the Supreme Court "viewed that 'temporary' confinement as permissible." *Nadarajah,* 443 F.3d at 1080 (quoting *Demore,* 538 U.S. at 530-531, 123 S.Ct. 1708); *see also Nadarajah,* 443 F.3d at 1081 & n. 4 (concluding that "[t]here is no indication anywhere in *Demore* that the Court would countenance an indefinite detention," and noting that "references to the brevity and limited nature of the confinement are found throughout" *Demore* ). The Ninth Circuit reasoned that the petitioner's detention in *Nadarajah* was "more akin to the situation in *Zadvydas,* which involved " 'indefinite' and 'potentially permanent' " detention. *Nadarajah,* 443 F.3d at 1080 (quoting *Zadvydas,* 533 U.S. at 690-691, 121 S.Ct. 2491). "Nonetheless, *Demore* endorses the general proposition of 'brief' detentions, with a specific holding of a six-month period as presumptively reasonable." *Nadarajah,* 443 F.3d at 1080. Thus, "[a] detention of nearly five years-ten times the amount of time the Supreme Court has considered acceptable absent a special showing-is plainly unreasonable under any measure," including section 1226(c). *Nadarajah,* 443 F.3d at 1080.

*Nadarajah* does not cite *Tijani* 's brief opinion holding unlawful an alien's prolonged detention under section 1226, but the holdings of the two cases

are consistent. To avoid deciding the constitutionality of section 1226(c) as applied to the petitioner in that case, who had been detained for more than two years and eight months pending a direct appeal of his order of removal, *Tijani* construed the

the authority conferred by § 1226(c) as applying to expedited removal of criminal aliens. Two years and eight months of process is not expeditious; and the foreseeable process in this court, where the government's brief in Tijani's appeal of the removal was only filed last month after two extensions of time, is a year or more.

*Tijani,* 430 F.3d at 1242. *Tijani* held that the petitioner was entitled to release unless the government provided him with a bond hearing and established that he was a flight risk or a danger to the community. *896 Tijani,* 430 F.3d at 1242.[FN8] In a concurring opinion examining the merits of the petitioner's claims, Judge Tashima concluded, among other things, that the petitioner was entitled to be released because his detention was unreasonable under *Demore* and *Zadvydas. See Tijani,* 430 F.3d at 1249-1250 (Tashima, J., concurring).

> FN8. *Tijani* is distinguishable from *Nadarajah* in that the latter case ordered the petitioner released on conditions set by the Attorney General, while the former ordered that petitioner be given a bond hearing (or be released if a bond hearing was not timely held). However, it is clear from *Nadarajah* that no useful purpose would have been served by conducting a bond hearing because the court also held that (1) ICE abused its discretion in denying the petitioner parole into the United States because there was no facially plausible evidence that his detention was in the public interest or that his release posed a risk to national security; (2) humanitarian release was warranted on health grounds because the petitioner's health was deteriorating in custody; and (3) the petitioner also was entitled to release pending appeal

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

504 F.Supp.2d 887
504 F.Supp.2d 887
(Cite as: 504 F.Supp.2d 887)

under Fed. R.App. P. 23(b) because he had shown both a probability of success on the merits and that the balance of hardships tipped in his favor. *Nadarajah,* 443 F.3d at 1082-1084.

The government contends that *Nadarajah* does not control because it is limited to its facts or its facts are distinguishable, and because it arose under a different detention statute. [*See* Answer 12-19; Joint Status Report 2-3]. *Nadarajah* involved an alien who, like petitioner, had been detained for five years, but unlike petitioner, the petitioner in *Nadarajah* enjoyed rare success at the administrative level by winning relief from removal from the IJ and the BIA. His case had been referred to the Attorney General for review, but his successful applications for relief made his removal unlikely, and he had not filed any court appeals which even arguably prolonged his detention. The government, however, never persuasively explains why that difference matters.

The Ninth Circuit did not limit its holding in *Nadarajah* to the facts of that case or otherwise indicate that it was crafting a rule of limited application because of the relatively unusual posture of the petitioner's application for relief from removal. Instead, it relied upon principles of statutory construction in light of existing Supreme Court authority to hold that the "general immigration detention statutes" do not authorize indefinite detention, and that an alien detained under those statutes beyond the presumptively reasonable six-month period is entitled to release with appropriate conditions when the government does not rebut the alien's showing that his removal is not reasonably foreseeable. *See Nadarajah,* 443 F.3d at 1079-1080, 1084. It concluded that because the petitioner in *Nadarajah* had shown that his removal was improbable, and because his case had been referred to the Attorney General with no timetable for a decision, he had succeeded in showing that his removal was not reasonably foreseeable, and the government had not rebutted that showing. That conclusion, coupled

with "the unreasonable length" of the petitioner's detention up to that point, justified his immediate supervised release. *Nadarajah,* 443 F.3d at 1082.

Under *Nadarajah,* petitioner's continued prolonged detention is not authorized by the statute under which he is detained. Like the petitioner in *Nadarajah,* petitioner has been detained for more than five years, much longer than the six-month period described by the Ninth Circuit as presumptively reasonable under the general immigration detention statutes. *See Nadarajah,* 443 F.3d at 1080 ("A detention of nearly five years-ten times the amount of time the Supreme Court has considered acceptable absent a special showing-is plainly unreasonable under any measure."**897** ); *Tijani,* 430 F.3d at 1242 (holding that a detention of over two years and eight months was not within the authority conferred by section 1226(c)).

The government also argues that *Nadarajah* is distinguishable for other reasons. Unlike the petitioner in *Nadarajah,* who was detained under section 1225(b), petitioner's detention is governed by section 1226(c). As explained above, however, the Ninth Circuit's reading of *Demore* in *Nadarajah* indicates that section 1226(c), like section 1225(b), should be construed to prohibit indefinite detention and to contain the same reasonableness limitations on detention as section 1225(b). The Ninth Circuit interpreted *Demore* to stand for the proposition that a "brief" detention of no more than six months is presumptively reasonable for aliens detained under section 1226(c). *See Nadarajah,* 443 F.3d at 1080-1081 & n. 4. Although section 1226(c) makes the pre-removal period detention of "criminal aliens" mandatory, section 1226(c) is not one of the specialized provisions authorizing the detention for longer than six months of terrorists and other national security threats which the Ninth Circuit distinguished from the "general immigration detention statutes" subject to the reasonableness limitations described in *Nadarajah.*

The government also contends that the length of petitioner's detention should not weigh in favor

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

504 F.Supp.2d 887
504 F.Supp.2d 887
(Cite as: 504 F.Supp.2d 887)

of his release because he "has acted to prevent his removal" by filing two petitions for review and by obtaining a stay of removal. Respondents argues that these acts suspend or toll the removal period under 8 U.S.C. § 1231(a)(1)(C) and therefore that petitioner's continued detention is authorized. [*See* Answer 10-12].

Section 1231 governs the detention during and after the "removal period" of aliens who have been ordered removed. For the reasons explained above, petitioner's removal period has not begun, and petitioner's detention is governed not by section 1231 but by section 1226. Because the removal period has not yet begun, petitioner's direct appeals and issuance of a stay of removal cannot have suspended or tolled that period under section 1231(a)(1)(C).

Even if section 1231 applied to petitioner's case, it expressly authorizes extending the removal period and an alien's detention beyond 90 days only "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). Nothing in that statutory language suggests that an alien's exercise of his right to seek judicial review of an order of removal qualifies as "conspir[ing] or act[ing] to prevent" his removal within the meaning of the statute, which, which specifically applies to aliens who fail or refuse to act in "good faith" in effecting their removal. Moreover, "the word 'conspires' connotes secret, improper or unlawful action," and thus the remaining text of this section "imbue[s the phrase] 'acts to prevent' with a tincture of bad faith, dishonesty, or improper behavior," rather than contemplating additional detention for "an alien from seeking legal avenues of relief in a court of competent jurisdiction." *Arevalo v. Ashcroft*, 260 F.Supp.2d 347, 349 (D.Mass.2003)(holding that an alien who "simply exercised her statutory rights" by seeking a stay of deportation pending appeal did not "act to prevent" her removal under section 1231(a)(1)(C), and collecting cases); *see, e.g., Pe-*

*lich v. I.N.S.*, 329 F.3d 1057, 1059 (9th Cir.2003)(holding that the "proscription against indefinite detention articulated in"*Zadvydas* did not apply to detention under section 1231(a)(1)(C) where the petitioner's detention was indefinite only because he **\*898** refused to cooperate with efforts to effect a removal order by "steadfastly refus[ing] to fill out" a Polish passport application and providing conflicting information regarding his name and background, and concluding that a detainee "cannot argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock"); *Lema v. I.N.S.*, 341 F.3d 853, 854 (9th Cir.2003)(holding that an alien subject to a removal order who misrepresented his nationality to a consular official when applying for travel documents and refused to reapply "cannot meet [his] burden to show there is no significant likelihood of removal in the reasonably foreseeable future," and that the alien's continued detention therefore was authorized under section 1231(a)(1)(C)).

In addition, it would be anomalous and inconsistent to conclude that seeking judicial review and obtaining a stay of removal are "acts to prevent" removal that can lead to *suspension* of the removal period under section 1231(a)(1)(C) when the preceding paragraph of the same statute expressly provides that "if a removal order is judicially reviewed" and "if a court orders a stay of removal," the removal period *does not even begin* until that process is complete, on the date the court issues its final order. 8 U.S.C. § 1231(a)(1)(B)(ii).

When an alien petitions for judicial review of a removal order, it is virtually certain that his or her appeal will delay removal by some period of time even if it does not succeed in preventing it, but to suggest that the petitioner therefore "holds the keys" to his release from detention ignores the reality that the petitioner's conduct is merely one factor among many that affects the length of the judicial review process. For example, petitioner filed a pro se habeas petition challenging his detention in the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

504 F.Supp.2d 887
504 F.Supp.2d 887
(Cite as: 504 F.Supp.2d 887)

Southern District of California in June 2005. [*See* Answer 7 & Exs. 29-30]. In August 2005, apparently over petitioner's objection, the district court sua sponte transferred the petition-erroneously, as it turned out-to the Ninth Circuit, which transferred it back in January 2006. [*See* Answer 7 & Exs. 29, 31]. Any delay caused by that transfer was not petitioner's doing. *See Ly v. Hansen,* 351 F.3d 263, 272 (6th Cir.2003)(explaining, in a case involving detention of a criminal alien under section 1226(c), that "appeals and petitions for relief are to be expected as a natural part of the process. An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him. Further, although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take.").

Respondents also asserts that petitioner's habeas petitions and petitions for review were frivolous and were filed to "stall" or "stymie" efforts to remove him. [Answer 15]. A court must "be sensitive to the possibility" that a removable alien may engage in "dilatory tactics" in order to "compel a determination" that his detention was unreasonably long. *Ly,* 351 F.3d at 272 (noting that the alien's application for relief from removal and his need for a rescheduled hearing were partly responsible for prolonging his detention, but that those filings did not justify the overall length of detention). Here, however, the government's characterization of petitioner's court filings as merely frivolous vehicles to delay removal is conclusory and unsupported by citation to specific filings or court rulings in his cases showing that petitioner engaged in delay tactics. For one thing, not all of petitioner's court cases challenged his removal or detention or included a stay of removal, so in those instances he cannot be said to have "stalled" his removal or caused his own detention. **899 [*See* Petition 8 & n. 5; Travers 3, 8-9]. *Cf. Tijani,* 430 F.3d at 1249 (noting that "while [the petitioner] requested continuances, those occurred early in the pro-

cess, and have not contributed at all to the year-long delay since the BIA heard his appeal"). Moreover, petitioner twice was successful in obtaining a stay of removal. The issuance of stays by the district court and Ninth Circuit belies the government's contention that his petitions were frivolous. A stay of removal is not automatic; it is granted only if the petitioner shows either the probability of success on the merits and the possibility of irreparable injury, or that serious legal questions are raised and the balance of hardships tips sharply in the petitioner's favor. *See Andreiu v. Ashcroft,* 253 F.3d 477, 484-484 (9th Cir.2001)(en banc); *Abbassi v. I.N.S.,* 143 F.3d 513, 514 (9th Cir.1998). [*See* Answer, Ex. 25 (Order Staying Removal) ].

[8] In sum, petitioner has shown that his detention for five years was excessive and unauthorized by the controlling statute, section 1226(c). The remaining question is whether petitioner has "provid[ed] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," making his continued detention "reasonably necessary to bring about" his removal. If so, the government must respond with evidence sufficient to rebut that showing. *See Zadvydas,* 533 U.S. at 689-690, 699, 121 S.Ct. 2491; *Nadarajah,* 443 F.3d at 1079-1080.

Petitioner contends that his removal is not reasonably foreseeable for two reasons. First, he argues that the Ninth Circuit may well reverse his removal order or remand his case for further administrative proceedings because his petition for review advances substantial, meritorious arguments that the IJ erred in ruling that petitioner's 1996 conviction for second-degree burglary under California law was an aggravated felony and by holding that he was ineligible for relief from removal. [*See* Petition 11]. Second, petitioner argues that regardless of the likelihood of prevailing on his petition for review, his removal is not significantly likely to happen in the foreseeable future because there is no time frame for a decision by the Ninth Circuit, which relied partly on the absence of a timetable for de-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

504 F.Supp.2d 887
504 F.Supp.2d 887
(Cite as: 504 F.Supp.2d 887)

Page 13

cision in *Nadarajah* to conclude that there was no significant likelihood of removal in the reasonably foreseeable future. *See Nadarajah,* 443 F.3d at 1081. Those reasons are sufficient to show that petitioner's removal is not reasonably foreseeable.

The government has made no attempt to respond to petitioner's contentions regarding the merits of his pending petition for review. The government maintains that petitioner's "removability is not in doubt," but that assertion is based on petitioner's history of past pro se filings, rather than on any specific evaluation of, or argument regarding, the merits of his pending petition before the Ninth Circuit, where petitioner is now represented by counsel. [Answer 19]. The government points out that petitioner does not have the benefit of having "won at every administrative level" and of having "won relief denied 98% of applicants" for asylum, like the petitioner in *Nadarajah.* [*See* Answer 14]. Although the petitioner's success before the agency in *Nadarajah* was a "powerful indicator of the improbability of his foreseeable removal," he was not guaranteed relief from removal because "the ultimate decision on whether to grant asylum [was] committed to the Attorney General's discretion ...."*Nadarajah,* 443 F.3d at 1081. Furthermore, the Ninth Circuit did not suggest that the rare success enjoyed by the petitioner in *Nadarajah* was a prerequisite for demonstrating the absence of a significant likelihood of removal in the reasonably foreseeable future.

**\*900** The government does not attempt to argue that there is a timetable for decision by the Ninth Circuit regarding petitioner's petition for review, nor could it credibly do so. According to the docket sheet available on PACER for *Martinez v. Gonzales,* No. 05-73975 (9th Cir. filed July 5, 2006), the petition for review was transferred to the Ninth Circuit and filed in that court nearly two years ago. Petitioner's opening brief was filed on December 30, 2005, and his reply brief was filed on May 25, 2006. On November 28, 2006, about six months after briefing had been completed, petition-

er's counsel filed a notice of appearance, and the court ordered replacement briefing rather than supplemental briefing. Both parties subsequently filed unopposed motions for extensions in the replacement briefing schedule. The government's answering brief was filed on June 11, 2007, and petitioner's reply brief is due on July 12, 2007.

In *Nadarajah,* the Ninth Circuit rejected the government's argument that the petitioner was not being held indefinitely because, even though the Attorney General "will someday review [the petitioner's] case, and 'his detention will at some point end,' [n]o one can satisfactorily assure us as to when that day will arrive. Meanwhile, petitioner remains in detention." *Nadarajah,* 443 F.3d at 1081. In *Tijani,* the court ordered the petitioner to be released or provided a bail hearing where he had been detained under section 1226(c) for more than two years and eight months, his petition for review was pending, the government had filed its answering brief only a month earlier, and "the foreseeable process in this court ... is a year or more." *Tijani,* 430 F.3d at 1242. The circumstances of this case are analogous because even though petitioner's petition for review at some point will be adjudicated, there is no timetable or date for disposition of his petition or for effectuating his removal if he loses. Petitioner's removal therefore is not reasonably foreseeable, and his continued detention is not reasonably necessary to effect his removal.

Because petitioner obtained a preliminary injunction granting him a bond hearing and was released on bond following a hearing before an IJ, the government's request that any review of his detention be limited to a file custody review is moot. The government's contention that petitioner should not be released because he is a flight risk or poses a danger to the community are unpersuasive in light of the IJ's conclusion that the government failed to meet its burden of proof to establish by clear and convincing evidence that petitioner presents a sufficient danger or flight risk. Specifically, the IJ found that petitioner's dangerousness did not justify pro-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

504 F.Supp.2d 887
504 F.Supp.2d 887
(Cite as: 504 F.Supp.2d 887)

Page 14

longing his detention because (1) he presented sufficient evidence of rehabilitation since his re-incarceration in 2002; (2) he has plans for future counseling with his sister, and (3) he has not been convicted of any violent crimes. [Petitioner's Suppl. Mem., Ex. B at 5]. The IJ found that the evidence of flight risk did not justify prolonging petitioner's detention because (1) petitioner's entire family and his daughter reside in the United States; (2) he has no family in Ecuador; (3) he appeared for all of his prior criminal proceedings and immigration proceedings; and (4) although petitioner "was clearly adverse" to the possibility of leaving the United States, bond could be set in an amount that would reasonably ensure his appearance. [Petitioner's Suppl. Mem., Ex. B at 5].

Petitioner's continued detention is not authorized by statute, and therefore he is entitled to release.

### Conclusion

It is recommended that the petition be granted, and that petitioner be released on **901** the conditions already imposed by the IJ's order dated February 8, 2007.

June 25, 2007.

C.D.Cal.,2007.
Martinez v. Gonzales
504 F.Supp.2d 887

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.
Slip Copy                                                                    Page 1
Slip Copy, 2007 WL 1516744 (S.D.Cal.)
**(Cite as: Slip Copy)**

**H**
Macalma v. Chertoff
S.D.Cal.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. California.
Paul Guevarra MACALMA, Petitioner,
v.
Michael HERTOFF, Secretary of Homeland Secur-
ity, et.al., Respondents.
**No. 06CV2623 WQH (AJB).**

May 22, 2007.

Federal Defenders, Zandra Lopez, Federal Defend-
ers of San Diego, San Diego, CA, for Petitioner.
US Attorney CV, Samuel William Bettwy, US At-
torneys Office Southern District of California Civil
Division, San Diego, CA, for Respondents.
HAYES, Judge.
*1 The matter before the Court is the Petition
for Writ of Habeas Corpus pursuant to 28 U.S.C. §
2241 filed by Paul Guevarra Macalma. (Doc. # 1.)

### BACKGROUND

Petitioner Paul Guevarra Macalma is a native
and citizen of the Philippines. Petitioner was born
in Manila on April 24, 1981. Petitioner's father
Benjamin Macalma left the Philippines and was ad-
mitted to the United States as a lawful permanent
resident on December 31, 1981. Benjamin Macalma
became a United States citizen by naturalization on
June 18, 1993.

On November 16, 1996, Petitioner entered the
United States as a lawful permanent resident.

On September 20, 2000, Petitioner was con-
victed in California state court of receiving stolen
property in violation of California Penal Code §
496(a) and "sentenced to three years of probation
which was formally revoked on September 16,
2003."(Government's Return, Doc. # 6 at 3.)

On November 20, 2003, the Department of
Homeland Security took custody of Petitioner and
placed him in removal proceedings. Based upon his
September 20, 2000 conviction for receiving stolen
property, Petitioner was charged with deportability
under Section 237(a)(2)(A)(i) for having been con-
victed of a crime involving moral turpitude com-
mitted within five years after admission for which a
sentence of one year or longer may be imposed. In
the hearing before the Immigration Judge, Petition-
er claimed United States citizenship by acquisition
through his naturalized father.

On March 10, 2004, the Immigration Judge
found that Petitioner was not a citizen and ordered
him removed to the Philippines. Petitioner filed an
appeal to the Board of Immigration Appeals.

On October 22, 2004, the Board of Immigra-
tion Appeals upheld the decision of the Immigra-
tion Judge that Petitioner had not derived citizen-
ship through his father under former section 321 of
the Immigration and Naturalization Act, 8 U.S.C. §
1432(a).

On November 16, 2004, Petitioner filed a Peti-
tion for Review in the Court of Appeals for the
Ninth Circuit along with a motion to stay deporta-
tion pending resolution of the appeal. *Macalma v.
Gonzales,* No. 04-75821.

On June 14, 2005, Respondents filed a state-
ment of non-opposition to the motion for stay of re-
moval.

On August 5, 2005, the Court of Appeals filed
an order which appears in the docket in part as fol-
lows: "respondent has filed a statement of non-opp
to mtn for stay of removal; temporary stay of re-
moval continues in effect until the issuance of the
mdt or further order of the ct." (Docket # 6, Exhibit
12 at 5.)

On February 27, 2006, Petitioner filed his
opening brief in the Court of Appeals along with a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                         Page 2
Slip Copy, 2007 WL 1516744 (S.D.Cal.)
**(Cite as: Slip Copy)**

motion for appointment of counsel.

On March 21, 2006, the Court of Appeals denied the motion for appointment of counsel and ordered Respondents to file an answering brief within 30 days.

On June 5, 2006, Respondents filed a motion to remand to the Board of Immigration Appeals for re-consideration of the February 28, 2005 determination that Petitioner had not derived citizenship through his father under former section 321 of the Immigration and Naturalization Act, 8 U.S.C. § 1432(a). Respondents requested that the Court of Appeals remand the case to the Board "so that it can review this case in light of the Court's decision in *Minaysan [v. Gonzales,* 401 F.3d 1069 (9th Cir.2005) ]." (Doc. # 6, Exhibit 16 at 2.)

**\*2** On August 23, 2006, the Court of Appeals entered an order which appears on the docket in part as follows: "unless an opp to the mtn [to remand] is filed within 14 days of this order, the mtn will be granted."(Doc. # 6, Exhibit 14 at 7.)

On September 22, 2006, the Court of Appeals granted Respondents' "unopposed" motion to remand and stated "the parties are deemed to have agreed that the court's remand order shall stay petitioner's removal."(Doc. # 6, Exhibit 14 at 7.)

On November 28, 2006, Petitioner filed the Petition for Writ of Habeas Corpus now pending before this Court. (Doc. # 1.)

On December 7, 2006, this Court filed an Order to Show Cause why the Petition should not be granted ordering the Respondents to file a written return no later than December 29, 2006. (Doc. # 2.)

On January 23, 2007, this Court filed a Second Order to Show Cause upon Respondents' failure to comply with the Court's order filed on December 7, 2006. This Court ordered Respondents to file a written return no later than January 31, 2007. (Doc. # 3.)

On January 30, 2007, Respondents filed a Response to the Second Order to Show Cause stating that the Petition had not been served upon Respondents; that the Order to Show Cause filed on December 7, 2006 had not been received by Counsel for Respondents; and that the Second Order to Cause was received on January 29, 2007. Respondents requested and the Court allowed additional time to file a return. (Docs. # 4 and 5.)

On March 5, 2006, Respondents filed a Return in Opposition to the Petition for Writ of Habeas Corpus. (Doc. # 6.)

On March 9, 2007, the Board of Immigration Appeals issued a ruling "once again dismiss[ing] the appeal. (Doc. # 13, Exhibit 25 at 2.) The Board of Immigration Appeals considered *"Minasyan* to be materially distinguishable from the present case for a number of reasons."(*Id.*) The Board concluded that Petitioner had not met his burden of proving that he derived United States citizenship through either of his parents. (*Id.* at 3.)

On March 12, 2007, the American Civil Liberties Union filed a motion for leave to file a brief as *Amicus Curiae* which was granted by this Court. (Docs. # 7 and 10.)

On March 19, 2007, Petitioner filed a motion to reopen before the Board of Immigration Appeals.

On April 18, 2007, Respondents filed the Government's Opposition to *Amicus Curiae* Brief. (Doc. # 13).

On May 11, 2007, the American Civil Liberties Union filed a Reply to the Government's Opposition Brief. (Doc. # 16).

On May 3, 2007, Petitioner filed a Traverse. (Doc # 15.)

### CONTENTIONS OF THE PARTIES

Petitioner contends that he is entitled to release

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

from the custody of Respondents under appropriate conditions of supervision. Petitioner contends the case law supports the exercise of discretion in releasing deportees during the pendency of colorable challenges to the proceedings underlying their removal. Petitioner requests that the Court order Respondents to release him from custody under appropriate conditions of supervision.

**\*3** The *Amicus Curiae* Brief in Support of the Petitioner's Writ of Habeas Corpus contends that the Petitioner's prolonged detention is contrary to the immigration laws and the United States Constitution for the following three reasons: 1) there is no statute which authorizes Petitioner's prolonged detention of more than three years, 2) the immigration statutes and due process require that Petitioner be afforded a hearing to determine whether his detention is justified, and 3) the sheer length of Petitioner's detention violates the Due Process Clause of the United States Constitution. The *Amicus Curiae* Brief asserts that Petitioner's detention under 8 U.S.C. § 1226(c)(1)(C) was not authorized at any time because he was sentenced to three years of probation and was not sentenced to at least one year imprisonment as required pursuant to Section 1226(c)(1)(C). Even if Section 1226(c) applies, the *Amicus Curiae* Brief asserts that this case is not distinguishable in any meaningful way from the case of *Tijani v. Willis,* 430 F.3d 1241 (9th Cir.2005) in which the Court of Appeals concluded that detention of two years and eight months was not within the authority conferred by Section 1226(c). The Amicus Curiae Brief requests that the Court grant the Writ of Habeas Corpus and order Petitioner's immediate release under reasonable conditions of supervision, or, in the alternative, order the Respondents to hold a constitutionally adequate hearing before an immigration judge to determine whether the continued detention is justified.

Respondents contend that the Petition should be denied on the grounds that detention pending the completion of removal proceedings is mandatory for certain aliens who have committed specific criminal offenses. Respondents contend that Section 1226(c)(1)(C) mandates detention for Petitioner because he has been convicted of committing a crime involving moral turpitude and sentenced to at least one year of imprisonment. Respondents contend that there have been no inordinate delays in the administrative proceedings before the Immigration Judge and the Board of Immigration Appeals. Respondents contend that the *Tijani* case applies only to cases involving prolonged administrative removal proceedings and is not applicable to judicial delay. Respondents contend that Petitioner has the ability to prosecute his appeal from his home country and that he chose instead to pursue his claim through judicial review from within the United States making his detention voluntary. Respondents do not address the assertion that Section 1226(c) does not apply to Petitioner because he was not sentenced to at least one year imprisonment.

### DISCUSSION

Petitioner has been in the custody of the Secretary of the Department of Homeland Security and the Attorney General since November 20, 2003 pursuant to the authority conferred under 8 U.S.C. § 1226(c)(1)(C). Petitioner was ordered removed on March 10, 2004 and this order of removal has been stayed by order of the Court of Appeals up to the present time. This Court has jurisdiction under 28 U.S.C. § 2241 to determine a challenge to confinement on statutory and constitutional grounds which do not involve final orders of removal. *Nadarajah v. Gonzales,* 443 F.3d 1069, 1076 (9th Cir.2006). The final order of removal in this case has been stayed by the Court of Appeals and the resolution of the challenge to confinement does not involve a final order of removal.

**\*4** Under Section 1226(a), an alien charged with removability may, upon a warrant, be arrested and detained pending removal proceedings. Such an alien may, in the discretion of the Attorney General (now the Secretary of Homeland Security), be released on bond or on conditional parole, pending

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 1516744 (S.D.Cal.)
**(Cite as: Slip Copy)**

the completion of the removal proceedings, unless the alien falls within the categories of aliens described in Section 1226(c).

Petitioner is charged with being subject to removal pursuant to 8 U.S.C. § 1227(a)(2)(A)(i) which provides for the deportation of a lawfully admitted alien who is convicted of a crime involving moral turpitude committed within five years after the date of admission and "is convicted of a crime for which a sentence of one year or longer may be imposed."Section 1227(a)(2)(A)(i)(II). Petitioner is held under the detention provisions of 8 U.S.C. § 1226(c)(1)(C) which provides that "the Attorney General shall take into custody an alien who-is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentenced to a term of imprisonment of at least 1 year."The documents submitted in this case do not establish that Petitioner has been "sentenced to a term of imprisonment of at least 1 year."8 U.S.C. § 1226(c)(1)(C). Respondent has not established that 8 U.S.C. § 1226(c)(1)(C) authorizes the mandatory detention of the Petitioner. Based upon the record in this case, Petitioner is entitled to a release hearing pursuant to the provisions of 8 U.S.C. § 1226(a).

IT IS HEREBY ORDERED that the Petition for Habeas Corpus is granted as follows: Respondents shall provide a release hearing to Petitioner pursuant to the provisions of 8 U.S.C. § 1226(a) within 10 days of the date of this order. The Court appoints the Federal Defender as counsel for Petitioner for the sole purpose of representation in this habeas action. Respondents shall file a status report in this case within 20 days of the date of this order. This case will remain open pending further order of this Court.

S.D.Cal.,2007.
Macalma v. Chertoff
Slip Copy, 2007 WL 1516744 (S.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS** Gurdev Singh
ICE EL CENTRO DETENTION CENTER
1115 N IMPRIAL AVE., EL CENTRO, CA 92243

**DEFENDANTS** FILED
2000 MAR 12 PM Michael Chertoff et al.
CLERK US DISTRICT
SOUTHERN DISTRICT OF CALIFORNIA
BY ___ DEPUTY

**(b)** County of Residence of First Listed Plaintiff    SAN DIEGO
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    SAN DIEGO
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

'08 CV 0464 BTM JMA

Attorneys (If Known)    (619) 557-5662
KAREN P. HEWITT, U.S. ATTORNEY
ATTN: CIVIL PROCESS CLERK
880 FRONT STREET, SAN DIEGO, CA 92101

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)    and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | & Disclosure Act | | Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | | ☐ 870 Taxes (U.S. Plaintiff | Under Equal Access to |
| ☐ 240 Torts to Land | Accommodations | ☒ 530 General | ☐ 790 Other Labor Litigation | or Defendant) | Justice |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | Security Act | 26 USC 7609 | State Statutes |
| | | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. § 2241

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions):
JUDGE _____    DOCKET NUMBER _____

DATE 3/12/08    SIGNATURE OF ATTORNEY OF RECORD  Gurdev Singh

**FOR OFFICE USE ONLY**
RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____