**JAMES FIFE**
California State Bar No. 237620
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, CA 92101-5008
Telephone: (619) 234-8467
james_fife@fd.org

**Attorneys for GURDEV SINGH**

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### (HON. BARRY T. MOSKOWITZ)

| | |
|---|---|
| **GURDEV SINGH,** | Case No. 08CV0464-BTM (JMA) |
| Petitioner, | |
| v. | |
| **MICHAEL CHERTOFF, et al.,** | **PETITIONER'S TRAVERSE** |
| Respondents. | |

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I        MR. SINGH IS NOT IN "VOLUNTARILY DETENTION." . . . . . . . . . . . . . . . . . . . . . . . . . 2

II       RESPONDENTS ARE JUDICIALLY ESTOPPED FROM OBJECTING TO THE STAY OF REMOVAL AS DILATORY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III      RESPONDENTS' CLAIM LACKS MERIT THAT THIS CASE IS MATERIALLY DISTINGUISHABLE FROM THE GOVERNING CASES. . . . . . . . . . . . . . . . . . . . . . . . 9

         B.      *Tijani/Nadarajah* Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

EXHIBITS

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## FEDERAL CASES

Aguilera-Ruiz v. Ashcroft,
    348 F.3d 835 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Clark v. Martinez,
    543 U.S. 371 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Cruz-Ortiz v. Gonzales,
    221 Fed. App'x 531 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,4

Judulang v. Chertoff,
    535 F. Supp.2d 1129 (S.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . 2,11,12,13,15

Martinez v. Gonzales,
    504 F. Supp. 2d 887, 899 (C.D. Cal. 2007) . . . . . . . . . . . . . . . . . . 10,13,14,16

Mau v. Chertoff,
    ___ F. Supp.2d ___, 2008 WL 687368 (S.D. Cal. Mar. 11, 2008) . . . . . . . . . . 2,10,11,13

Morgan v. Gonzales,
    495 F.3d 1084 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Mboussi-Ona v. Crawford,
    No. CV06-2897 PHX-NVW, 2007 WL 3026946 (D.Ariz. Sept. 27, 2007) . . . . . . . 12,13

Nadarajah v. Gonzales,
    443 F.3d 1069 (9th Cir. 2006) . . . . . . . . . . 1,2,4,6,9,10,13,14,15,16

Oyedeji v. Ashcroft,
    332 F. Supp. 2d 747, 753 (M.D. Pa. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Pelich v. INS,
    329 F.3d 1057 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,12

Rasul v. Bush,
    542 U.S. 466 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Rissetto v. Plumbers & Steamfitters Local 343,
    94 F.3d 597 (9th Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Tijani v. Willis,
    430 F.3d 1241 (9th Cir. 2005) . . . . . . . . . . 1,2,4,6,9,11,12,13,14,15,16

Wagner v. Prof'l Eng'rs in Cal. Government,
    354 F.3d 1036 (9th Cir.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Watson v. United States,
    128 S. Ct. 579 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Whaley v. Belleque,
    ___ F.3d ___ (9th Cir. Mar. 24, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Zadvydas, Demore v. Kim,
    538 U.S. 510 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,4,9,10,15

Zadvydas v. Davis,
    533 U.S. 678 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,3,15

Zedner v. United States,
    126 S. Ct. 1976 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,9

## DOCKETED CASES

Casas-Castrillon v. Lockyer,
    No. 07-56261 (9th Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Delgado v. Chertoff,
    No. 07CV1315-W (CAB) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,10,11,13

Mustanich v. Gonzales,
    No. 07CV1100-WQH (LSP), 2007 WL 2819732 (S.D. Cal. Sept. 26, 2007) . . . . . . . 10,11,12

Straube v. Chertoff,
    No. 07CV1751-JM (NLS) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,5,9,10,11,13

# FEDERAL STATUTES

8 U.S.C. §§ 1226 & 1231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
8 U.S.C. § 1229a(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
8 U.S.C. § 1231(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
28 U.S.C. § 2241 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

# FEDERAL REGULATIONS

8 C.F.R. §§ 1003.2(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
8 C.F.R. § 1003.3(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
8 C.F.R. § 1003.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

# FEDERAL RULE

9th Cir. R. 36-3(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

# MISCELLANEOUS

21 C.J.S. Courts § 227 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
U.S. Gen. Accounting Office, Immigration Enforcement: Better Data and Controls Are Needed to Assure
        Consistency with the Supreme Court Decision on Long-Term Alien Detention 19 (2004) . . . . . . 3

1 | **JAMES FIFE**
California State Bar No. 237620
2 | **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
3 | San Diego, CA 92101-5008
Telephone: (619) 234-8467
4 | james_fife@fd.org

5 | **Attorneys for GURDEV SINGH**

6

7

8 | UNITED STATES DISTRICT COURT

9 | SOUTHERN DISTRICT OF CALIFORNIA

10 | (HON. BARRY T. MOSKOWITZ)

11 | **GURDEV SINGH,**                                    Case No. 08CV0464-BTM (JMA)

12 |                                    **Petitioner,**

13 |         v.

14 | **MICHAEL CHERTOFF, et al.,**              **PETITIONER'S TRAVERSE**

15 |                                    **Respondents.**

16

17

18 | **STATEMENT OF THE CASE**

19 |         Petitioner, Gurdev Singh, filed the instant Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241

20 | on March 12, 2008. Mr. Singh sought release pending the outcome of his challenges to his deportation order

21 | under the authority of Tijani v. Willis, 430 F.3d 1241 (9th Cir. 2005), and Nadarajah v. Gonzales, 443 F.3d

22 |

23 | 1069 (9th Cir. 2006). Those decisions applied the due process principles of Zadvydas v. Davis, 533 U.S. 678

24 | (2001), against unreasonable civil immigration detention to cases where the order of removal is subject to

25 | further legal challenges.

26

27 |         Respondents filed their Return on May 7, 2008. Respondents argue the Petition should be denied,

28 | because Mr. Singh is in "voluntary detention," as he sought and obtained a stay of his removal order. Return

at 3-5. Respondents also argue that <u>Zadvydas</u>, <u>Tijani,</u> and <u>Nadarajah</u> are distinguishable from this case, and so do not provide a basis for relief here. Return at 6-9.

For the reasons given below, each of the Respondents' contentions should be rejected, and this Court should grant the Petition. This Court should, therefore, follow the reasoning of three other judges of this Court, who have recently denied each of the Respondents' legal contentions. See <u>Judulang v. Chertoff</u>, 535 F. Supp.2d 1129 (S.D. Cal. 2008); <u>Mau v. Chertoff</u>, ___ F. Supp.2d ___, 2008 WL 687368 (S.D. Cal. Mar. 11, 2008); Order Granting in Part Petition for Habeas Corpus, <u>Delgado v. Chertoff</u>, No. 07CV1315-W (CAB) (S.D. Cal. May 13, 2008) ("Delgado Order"); Order Partially Granting Petition for Writ of Habeas Corpus, <u>Straube v. Chertoff</u>, No. 07CV1751-JM (NLS) (S.D. Cal. May 14, 2008) ("Straube Order").

## ARGUMENT

### I

### MR. SINGH IS NOT IN "VOLUNTARILY DETENTION."

Respondents first argue, citing <u>Cruz-Ortiz v. Gonzales</u>, 221 Fed. App'x 531 (9th Cir. 2007), that Mr. Singh's near 19 months in civil custody awaiting the outcome of his petition for review is "voluntary" and so he is entitled to no relief. Return at 3-5. As Respondents note, Return at 4, this precise argument has been repeatedly rejected by other judges of this Court. See <u>Judulang</u>, 535 F. Supp.2d at 1133-34; <u>Mau</u>, 2008 WL 687368, at *4; Delgado Order at 6; Straube Order at 6. While Respondents do cite decisions of this Court holding the contrary, Return 3-4, each of their cited cases was an instance where no attorney was appointed for the petitioner. The difference in result when lawyers fully participate on both sides is seen in the four decisions cited by Mr. Singh, where Respondents cited these same authorities to no avail. Respondents present no new bases in this case to justify a different result from <u>Judulang</u>, <u>Mau</u>, <u>Delgado</u>, and <u>Straube</u>.

Respondents' theory of "voluntary detention" is fallacious, legally unsupported, unreasonable, immaterial, and factually absurd. It should be rejected out of hand.

First, the "voluntary detention" theory is a fallacy, because it is premised on a false dilemma between detention and removal. According to Respondents, there is no alternative between continued detention by ICE and vacating the stay of the removal order. However, Respondents overlook the manifest third option of neither removal nor detention, but a release on supervision, just like any of the other 16,000 deportees whom ICE supervises on release. See U.S. Gen. Accounting Office, Immigration Enforcement: Better Data and Controls Are Needed to Assure Consistency with the Supreme Court Decision on Long-Term Alien Detention 19 (2004) (figures for fiscal year 2003). In fact, the statutes contain a separate body of provisions relating to pre-removal-order detention/release and post-order detention/release, 8 U.S.C. §§ 1226 & 1231, respectively. The existence of a set of statutory and regulatory provisions relating to the release of post-final-order deportees merely demonstrates that removal is *not* the only alternative to continued detention for deportable aliens with active appeals. Rather, it is precisely because Respondents' decision not to release Mr. Singh is unreasonable that habeas corpus relief is appropriate. See Zadvydas, 533 U.S. at 699 (describing review of unreasonably prolonged executive detentions as fulfilling the "historic purpose of the writ").

Second, Respondents can cite no binding authority for their "voluntary detention" theory. Instead, they rely on a one-paragraph, unpublished, per curiam disposition to support their position. Return at 3-4. Respondents can muster no greater legal foundation than one memorandum disposition, itself lacking any legal analysis or citation to authority, and despite the Circuit rule that such decisions carry no precedential weight beyond the specific case. See 9th Cir. R. 36-3(a). Indeed, as Circuit Judge Milan Smith remarked at the oral argument on Casas-Castrillon v. Lockyer, No. 07-56261 (9th Cir.), regarding the Government's use

of an unpublished case to support its argument, "it may even carry negative weight."[1]

Nor does Tijani, Nadarajah, or any of the Supreme Court cases from Zadvydas on, even mention the concept of "voluntary detention" or provide a basis for holding that due process protections are suspended by seeking lawful redress for illegal removal orders. Moreover, Cruz-Ortiz is factually unlike Mr. Singh's case, because the Government there had made efforts to removal Cruz-Ortiz lawfully, and had in fact put him on a bus, which was en route to Mexico when his attorneys filed an emergency petition for stay, which stopped the bus. See Cruz-Ortiz v. Gonzales, Petitioner's Opening Brief, available at 2006 WL 2984729 (June 30, 2006). Mr. Singh's removal was not dramatically halted in mid-stream, and his stay of removal has been in place for a year. Indeed, the Government did not even oppose the stay request in Mr. Singh's petition for review, similar to Nadarajah. See Traverse Exhibit A attached hereto (Ninth Circuit docket in Case No. 07-71577). Respondents present no binding, or even persuasive, legal analysis, and this contrasts with the thorough analyses rejecting "voluntary detention." See, e.g., Oyedeji v. Ashcroft, 332 F. Supp. 2d 747, 753 (M.D. Pa. 2004) ("An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him. Further, although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations take.").

Third, because Respondents' theory requires detainees to trade other rights to obtain freedom from detention, their analysis is unreasonable and fundamentally unfair. Respondents urge conditioning detainees'

---

[1] Adding to the non-authoritative nature of Cruz-Ortiz is the fact that the one sentence upon which Respondents rely is *obiter dictum*. In the first sentence of the disposition, the Court holds that the district court did not even have jurisdiction to consider Cruz-Ortiz's habeas petition under the REAL ID Act. See 221 Fed. App'x at 531. The next sentence, starting with "In any event . . .," is an alternative holding with no materiality to the outcome, given the existence of a dispositive, jurisdictional defect. See 21 C.J.S. Courts § 227 (2007) (citing as example of dictum additional discussion following finding of no jurisdiction).

liberty on agreeing to forego the right to pursue their legal challenges.  Relying on the fact that deportees are

allowed to pursue petitions for review *in the courts* from abroad, Return at 5, Respondents ignore the corollary

that immigration appeals not infrequently result in a remand to the administrative apparatus for final

determination.  Should an appellate win involve a remand to the IJ or BIA, relief will be precluded, for an

alien may not pursue administrative proceedings from outside the United States during."  See 8 U.S.C.

§ 1229a(b)(5).  Thus, while *judicial* review can proceed while the alien is abroad, the regulations make clear

that the administrative process stops when an alien departs the country before its conclusion.  See 8 C.F.R.

§§ 1003.2(d), 1003.3(e), & 1003.4.

Were Mr. Singh to depart as Respondents urge, and his appeal is successful, but involves a remand

for findings by the IJ as to his cacellation claim, he would be unable to administratively appeal any adverse

finding under the clear language of 8 C.F.R. § 1003.3(e): "Departure from the United States of a person who

is the subject of deportation proceedings, prior to the taking of an appeal from a decision in his or her case,

shall constitute a waiver of his or her right to appeal."  The statutes and regulations consistently contemplate

that departure--voluntary or not--waives further administrative review.  The courts have applied this departure

bar very strictly.  See Aguilera-Ruiz v. Ashcroft, 348 F.3d 835, 838-39 (9th Cir. 2003) (brief departure from

country after deportation to buy tequila, candy, and a *piñata* for a party was a withdrawal of appeal of

deportation order, stating "an alien against whom a deportation order has been issued cannot afford to become

an international traveller if he hopes to maintain his status in this country") (citation and internal quotation

marks omitted).  Under Respondents' analysis, a remand after a successful petition for review would be a

Pyrrhic victory and shows the barrenness of their reasoning.  It requires detainees to purchase their liberty at

the price of abandoning the legal right to obtain administrative remedies resulting from a judicial appeal.  See

Straube Order at 6 (rejecting voluntariness argument in part because of departure bar on administrative

review).

Fourth, even if there were any legal merit or logic to Respondents' "voluntary detention" theory, they never explain how Mr. Singh's case is any different from the situation in <u>Tijani</u> or <u>Nadarajah</u> in that regard. By their logic, Mr. Tijani "stymied" the removal efforts by willfully filing habeas corpus petitions and a petition for review with a stay, and Mr. Nadarajah "obstructed" his deportation by voluntarily filing an asylum claim and obtaining a stay. See <u>Tijani</u>, 430 F.3d at 1242; <u>Nadarajah</u>, 443 F.3d at 1073. Taking affirmative steps lawfully to oppose an order of removal is not a proper basis to deny release here any more than it was in <u>Tijani</u> or <u>Nadarajah</u>.

Finally, Respondents' theory that detainees who challenge the legality of their removal orders are thereby choosing to remain in prolonged civil detention accords as little with factual reality as it does with legal authority. Mr. Singh is seeking release through this instant habeas action; he in no way consented, even by implication, to being incarcerated by ICE for nearly 19 months, over three times longer than the presumptively reasonable detention period recognized in the Supreme Court cases. Respondents tumble far down the rabbit hole when they brazenly assert that Mr. Singh's forced incarceration is the result of any "voluntary" choices to remain in custody. Mr. Singh's detention is not "voluntary" in any ordinary sense of the word. To paraphrase the Supreme Court's recent observation in <u>Watson v. United States</u>, 128 S. Ct. 579, 583 (2007), "The Government may say that a person [is voluntarily detained] simply by receiving [a stay of removal], but no one else would." Only in Wonderland or Orwell's <u>1984</u> can a deleterious, forced detention be labeled "voluntary."

/ / /

/ / /

/ / /

## II

## RESPONDENTS ARE JUDICIALLY ESTOPPED FROM OBJECTING TO THE STAY OF REMOVAL AS DILATORY.

Respondents were correct to anticipate Mr. Singh's argument based on judicial estoppel, Return at 5, because this argument has appeared repeatedly in other cases, but has not been reached as unnecessary to a rejection of Respondents' arguments.  Undeterred, Respondents argue that Mr. Singh's pursuit of his lawful challenges to his removal order is tantamount to an "obstruction" of removal  under Pelich v. INS, 329 F.3d 1057 (9th Cir. 2003).  Return at 7.  However, neither the estoppel argument nor the obstruction claim has merit.

In the first place, Respondents attack a phantom argument, because they confuse two legal concepts: equitable and judicial estoppel.  What Respondents describe is *equitable estoppel*, which entails a detrimental reliance on the assertion of another.  Return at 5 (citing Morgan v. Gonzales, 495 F.3d 1084, 1092 (9th Cir. 2007)).  Respondents' quotation from Morgan obscures the fact that that decision dealt solely with equitable estoppel: "Morgan argues in the alternative that even if no express promise of permanent residence was made, the government's actions--specifically, its delay in seeking to remove him-reasonably led him to believe that he would be permitted to remain in the United States indefinitely and thus the government should be *equitably estopped* from attempting to remove him."  Morgan, 495 F.3d at 1091-92 (emphasis added).

*Judicial estoppel* is a different matter, as there is no requirement of showing detrimental reliance, only that the estopped party is using its change in legal position to secure an advantage in the litigation:

> More important, under the doctrine of judicial estoppel, the state cannot now reverse its position in order to suit its current objectives. "Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 600 (9th Cir.1996)." Judicial estoppel is an equitable doctrine that is intended to protect the

integrity of the judicial process by preventing a litigant from playing fast and loose with the courts." Wagner v. Prof'l Eng'rs in Cal. Gov't, 354 F.3d 1036, 1044 (9th Cir.2004) (internal quotation marks omitted). The doctrine applies to a party's legal as well as factual assertions. Id.

Whaley v. Belleque, ___ F.3d ___, 2008 763774, at *4 (9th Cir. Mar. 24, 2008) (holding state was estopped from asserting contrary claims on exhaustion between state and federal habeas proceedings).

A party that asserts a particular position on an issue in one phase of litigation cannot reverse its view at a later stage to the opposing party's detriment. See Zedner v. United States, 126 S. Ct. 1976, 1987 (2006) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.  This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.") (citations and internal quotation marks omitted).  This is an equitable rule, "and thus cannot be reduced to a precise formula or test," id., but generally applies when three criteria are met: (1) a later position clearly conflicts with an earlier; (2) the party successfully persuades the court to adopt the earlier position; and (3) allowing the party to assert the contrary view would give an unfair advantage or impose an unfair detriment on the opposing party. See id. (citing New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001)).

Here, Respondents claim Mr. Singh's removal is reasonably foreseeable but for the act of seeking lawful review of his removal order and seeking a stay of removal.  However, their contentions now are clearly contrary to Respondents' earlier position in not opposing the request for a stay.  If Mr. Singh's appeal were

dilatory and groundless, the Government would surely have opposed the stay, as it regularly does. The failure to oppose the stay was deemed by the Court of Appeals a non-opposition. See id. (entry for August 3, 2007). As such, it is a concession that Respondents' legitimate interests are not prejudiced by the inability to remove Mr. Singh at this stage. Having agreed that Mr. Singh's request for a stay was proper, it is unfair and detrimental for Respondents to now reverse direction and use the stay they acquiesced to as a reason to deny him release under Tijani and Nadarajah. This Court should find they are estopped from making such an argument.

### III
### RESPONDENTS' CLAIM LACKS MERIT THAT THIS CASE IS MATERIALLY DISTINGUISHABLE FROM THE GOVERNING CASES.

Respondents argue that Zadvydas, Nadarajah, and Tijani do not apply to Mr. Singh's case. Return at 6-9. Their attempts to distinguish this case from the controlling law are groundless.

A.     *Zadvydas* Claim.

Respondents argue on various theories that the Supreme Court's decision in Zadvydas does not apply here. Respondents ignore the fact that the Ninth Circuit case law in Tijani and Nadarajah grounded its reasoning in the Zadvydas principles of due process limits on indefinite civil detention. See Tijani, 430 F.3d at 1242; Nadarajah, 443 F.3d at 1082. As Mr. Singh has shown, the Ninth Circuit cases are a natural development of the due process reasoning represented by a string of Supreme Court cases including Zadvydas, Demore v. Kim, 538 U.S. 510 (2003), and Clark v. Martinez, 543 U.S. 371 (2005). Petition at 4-8. Judge Miller likewise recognized that the legal pedigree of Tijani/Nadarajah lies in the Zadvydas reasoning. Straube

1  Order at 5-6.

2

3        Notwithstanding Respondents' citation of a number of unpublished and out-of-circuit decisions,

4  Return at 6-7, the authoritative law of this Circuit is that the prolonged delays attending judicial review are

5
   remediable under Zadvydas, even if there is some theoretical end to the proceedings.  The Ninth Circuit does
6
7  not define indefinite detention as do Respondents, and it specifically rejected this line of reasoning in

8
   Nadarajah.  There, the Government argued that because the administrative review of the petitioner's asylum
9

10  claim would eventually end, he was not indefinitely detained under Zadvydas and progeny.  See 443 F.3d at

11
    1081.  To this, the Court of Appeals replied, "Nor are we persuaded by the government's argument that
12

13  because the Attorney General will someday review Nadarajah's case, his detention will at some point end, and

14
    so he is not being held indefinitely. No one can satisfactorily assure us as to when that day will arrive.
15

16  Meanwhile, petitioner remains in detention." Id.  What is critical for qualifying as "indefinite" detention under

17
    Nadarajah is not that there is some future endpoint to the process, but that no definite timetable for reaching
18

19  that terminus exists.  See also Martinez v. Gonzales, 504 F. Supp. 2d 887, 899 (C.D. Cal. 2007) (accepting

20
    claim of indefinite detention under Nadarajah, because petition for review might result in remand and there
21

22  is no timetable for when the Court of Appeals would decide the petition for review, finding "These reasons

23
    are sufficient to show that petitioner's removal is not reasonably foreseeable" under Zadvydas); Mau, 2008
24

25  WL 687368, at *5 (noting that even if the appeal has finite duration, decision may result in remand and further

26
    proceedings); Delgado Order at 7; Straube Order at 7; Mustanich v. Gonzales, No. 07CV1100-WQH (LSP),
27

28  2007 WL 2819732, at *9-10 (S.D. Cal. Sept. 26, 2007) (rejecting Respondents' "reasonably foreseeable"

argument).

Tijani expressly included time on judicial review as contributing to the overall delay justifying granting habeas relief, and on that basis, this Court has repeatedly rejected Respondents' contrary claim that delays during appeal somehow do not count toward prolonged detention. See Judulang, 535 F. Supp. 2d at 1133-34; Mau, 2008 WL 687368, at *4; Delgado Order at 6; Straube Order at 6; Mustanich, 2007 WL 2819732, at *8. As the inherent delays attending appellate review are not excluded from the Tijani calculation of lengthy detention, it stands to reason that reasonable acts taken by a detainee to litigate his claims fully cannot be treated as barring relief, as Respondents claim. Return at 7. Respondents argue that because Mr. Singh sought and obtained extensions of time to file his briefs, he engaged in "dilatory actions" which justify denial of relief. Return at 7. However, it cannot be the case that a party–especially one, like Mr. Singh, who is represented by an attorney–is considered dilatory and acting in bad faith simply for requesting extensions of time, which the Court of Appeals subsequently granted. It is doubtful that Respondents would label the Government as being dilatory in the appeals at issue in Judulang, Mau, Delgado, and Straube, even though the Government in each of those cases asked for and was granted extensions of time. An extension of time is a normal event in appeals and one of the reasons why litigation typically proceeds slowly on both sides. Unless Respondents are able to substantiate a charge that Mr. Singh's attorney was acting unethically in causing unjustified delay to foment a Tijani/Nadarajah claim, their blustering about the delays caused by legitimate extensions of time carries no weight.

Respondents' reasoning is grounded in the notion that mere filing of a proper petition for review

should be construed automatically as bad-faith obstruction of the removal under cases like Pelich. That

reasoning and the out-of-circuit cases Respondents cite, Return 7-8, were presented to this Court in Judulang,

Mau, Delgado, and Straube, and each of those cases turned down Respondents' proffered theory. While it is

true that courts must be on their guard against "the potential for dilatory tactics and frivolous appeals by

detainees," Judulang, 535 F. Supp. 2d at 1134 (citing Respondents' authority, Mboussi-Ona v. Crawford, No.

CV06-2897 PHX-NVW, 2007 WL 3026946 (D.Ariz. Sept. 27, 2007)), there is no blanket rule in this Circuit

that merely filing for appellate review counts as obstruction and bad faith. See id. (rejecting claim of bad faith

delay, citing Martinez v. Gonzales, Mustanich, and Judge Tashima's concurrence in Tijani). As in Judulang,

Respondents here make no allegation that Mr. Singh's appeal is meritless, so normal delays attending the

litigation of his substantial argument on appeal do not preclude relief here any more than they did in Tijani.

    Moreover, when Respondents claim that Mr. Singh "has been the source of all delay" in litigating

the petition for review, Return at 8, they play fast and loose with the facts. While it is true that Mr. Singh's

attorney did obtain extensions of time, this was because he was pursuing a state court action that could lead

to overturning the predicate criminal conviction serving as the basis for removal, thus rendering the appeal

unnecessary. See Traverse Exhibit B attached hereto (Declaration of Gopalan Nair). Delay to seek a

dispositive collateral resolution of the appeal can hardly be treated as "dilatory action." In any event, it is

untrue that Mr. Singh was responsible for "all delay" in the case. The docket sheets show that the Government

twice failed to file the Certified Administrative Record within the deadline ordered by the Court of Appeals.

See Traverse Exhibit A (entries for April 25, 2007 and August 3, 2007). It was only last month that the

Government finally complied and filed the record with the Court. See id. (entry for April 10, 2008). If Mr. Singh's attorney did not have an independent reason for delaying the drafting and filing of the opening brief, it is a mystery how Respondents imagine he could have filed without posessing the administrative record in the case.[2] Mr. Singh notes these facts not because he is engaging in a battle of finger-pointing with Respondents, but simply as evidence that delays are a normal and inevitable part of appellate review, so it makes little sense to treats such routine events are acts of bad faith triggering rules of estoppel or unclean hands, as Respondents suggest. Return at 8.

**B.**    ***Tijani/Nadarajah* Claim**.

Under this heading, Respondents repeat the previously rejected arguments that because Mr. Singh is currently in judicial review, Tijani and Nadarajah do not apply to him. Return at 8. The argument that Tijani/Nadarajah are limited to administrative review only has been roundly rejected in the cases. See Judulang, 535 F. Supp. 2d at 1133-34; Martinez v. Gonzales, 504 F. Supp.2d at 896; Mau, 2008 WL 687368, at *4; Delgado Order at 6; Straube Order at 6; Mustanich, 2007 WL 2819732, at *8.

There is no merit to the claim that Tijani/Nadarjah relief is dependent on the particular forum in which the review process is stalled. A writ of habeas corpus acts " 'upon the person who holds [the prisoner] in what is alleged to be unlawful custody,' " Rasul v. Bush, 542 U.S. 466, 478 (2004) (quoting Braden v. 30th

---

[2] Respondents present a Declaration of Samuel Bettwy in which he relates second-hand assertions that the record was mailed to counsel in August 2007. If that were true, there is no explanation why the docket never shows it being filed with the Court of Appeals until April 2008. See Traverse Exhibit A (entry for April 10, 2008). Counsel for Mr. Singh indicates that he has yet to receive the record. See Traverse Exhibit B.

Judicial Circuit Court of Ky., 410 U.S. 484, 494-95 (1973)), not on the particular source of the illegal

detention, thus it does not matter whether a slow administrative or judiciary procedure is the cause of

prolonged detention.  The facts in Nadarajah indeed involved delay arising from administrative processing

of his asylum claim; however, there was nothing in the decision indicating that that factor had any effect on

the outcome there.  Nadarajah was expressed in broad terms, based on the interpretation of the general

immigration detention statutes, as viewed through the lens of the Supreme Court's case law.  A similar

argument that Nadarajah was limited to the specific facts of a case still on administrative review was rejected

in Martinez v. Gonzales, 504 F. Supp. 2d at 896 ("The Ninth Circuit did not limit its holding in Nadarajah

to the facts of that case or otherwise indicate that it was crafting a rule of limited application because of the

relatively unusual posture of the petitioner's application for relief from removal.").

        Moreover, Nadarajah and Tijani are fully consonant decisions.  See id. at 895.  Even if the former

involved no judicial review in resolving the underlying case, Tijani did, where over a third of the total delay

occurred after the removal order was administratively final.  To the extent that the procedural posture of the

underlying appeal is material to its reasoning, even if Nadarajah is factually distinct from this case in this

regard, Tijani is not.[3]

        Respondents next argue that because the *administrative portion* of the removal litigation was not

extraordinarily prolonged, he has no claim for relief.  Return at 8-9.  But whether the administrative portion

of review was expeditious does not preclude a claim that the *overall detention* is unreasonable.  The Supreme

---

        [3] For example, in Martinez v. Gonzales, the petitioner's administrative review was
completed more than four years before the writ was granted.  See id. at 889.

Court specifically rejected a similar argument in <u>Zadvydas</u>. Justice Kennedy argued at length in his dissent that relief should not be granted for substantive due process deprivation, because the detainees had been given adequate custody reviews under the regulations governing immigration detention. <u>Zadvydas</u>, 533 U.S. at 720-24 (Kennedy, J., dissenting). However, <u>Zadvydas</u> expressly rejected his reasoning and instead held that following the procedural niceties did not vitiate a substantive due process claim: "And, for the reasons we have set forth, we believe that an alien's liberty interest is, at the least, strong enough to raise a serious question as to whether, *irrespective of the procedures used*, cf. <u>post</u>, [121 S. Ct.] at 2515-2517 (Kennedy, J., dissenting), the Constitution permits detention that is indefinite and potentially permanent." <u>Zadvydas</u>, 533 U.S. at 696 (emphasis added).

Respondents' attempts to balkanize the prolonged detention into administrative and judicial delays merely obscures the crucial fact under <u>Zadvydas</u>, <u>Tijani</u>, and <u>Nadarajah</u> that Mr. Singh's 19-month detention pending the outcome of his active, ongoing petition for review is unreasonable, because "there is no significant likelihood of removal in the reasonably foreseeable future." <u>Zadvydas</u>, 533 U.S. at 701. As <u>Tijani</u> noted, appellate review may take a year or more, <u>see</u> 430 F.3d at 1242, and that may be followed by an administrative remand and further review. Such delay is, as in <u>Judulang</u>, "attributable to the complexity of the issues [Petitioner] has raised, not dilatory tactics . . . ." 535 F. Supp. 2d at 1134.

Relief under <u>Tijani/Nadarajah</u> is warranted when a detainee shows he has raised a substantive argument on appeal, and the delay in litigating that claim has resulted in prolonged detention. <u>See</u> <u>Judulang</u>, 535 F. Supp. 2d at 1134 (adopting the "substantive argument" standard proposed by Judge Tashima in <u>Tijani</u>).

A detainee need not show certainty of outcome to prevail.  See Return at 9 (noting that in Nadarajah the detienee had won at every level, whereas Mr. Singh has not).  While it is true that the facts in Nadarajah show the Government persisted in unsuccessfully challenging the petitioner's solid string of administrative wins, see Nadarajah, 443 F.3d at 1081, that fact was never identified as a criterion to obtain relief.  Thus, as observed in Martinez v. Gonzales, 504 F. Supp. 2d at 899, "the Ninth Circuit did not suggest that the rare success enjoyed by the petitioner in Nadarajah was a prerequisite for demonstrating the absence of a significant likelihood of removal in the reasonably foreseeable future."  Likewise, the petitioner in Tijani had not "won at every administrative level," or at any level until then, and yet the district court's denial of his habeas petition was reversed.  See Tijani, 430 F.3d at 1247 & n.7 (noting adverse IJ and BIA results in underlying case).  None of the decisions of this Court granting relief has required such a showing, and this Court should likewise reject the argument.

## CONCLUSION

For the foregoing reasons, and those given in the Petition, Mr. Singh is entitled to release, because he has been unreasonably and excessively detained during the course of pursuing his substantive legal challenges to his removal.  Accordingly, the Court should grant the Petition and issue a writ of habeas corpus forthwith ordering Petitioner's release from custody on reasonable and appropriate conditions of supervision. 8 U.S.C. § 1231(a)(3).

Respectfully submitted,

Dated: May 21, 2008

*s/ James Fife*
**JAMES FIFE**
**Federal Defenders of San Diego, Inc.**
Attorneys for Petitioner Singh
james_fife@fd.org

**EXHIBIT INDEX**

Exhibit A - General Docket, U.S. Court of Appeals for the Ninth Circuit  . . . . . . . . . . . . . . . 1-3

Exhibit B - Declaration of Goplan Nair . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5

Exhibit A

### General Docket
### United States Court of Appeals for the Ninth Circuit

| | |
|---|---|
| **Court of Appeals Docket #:** 07-71577 | **Docketed:** 04/25/2007 |

Singh, et al v. Mukasey
**Appeal From:** Board of Immigration Appeals

**Case Type Information:**
1) agency
2) review
3) San Diego Southern California

**Originating Court Information:**
**District:** BIA-1 : A42-967-796
**Date Filed:** 04/24/2007

**Prior Cases:**
None

**Current Cases:**
None

---

GURDEV SINGH
    Petitioner

Gopalan Nair, Esq., Attorney
Direct: 510/657-6107
Fax: 657-6914
[COR LD NTC Retained]
Suite 1A
39737 Paseo Padre Parkway
Fremont, CA 94538-0000

v.

MICHAEL B. MUKASEY, Attorney
General
    Respondent

Ronald E. LeFevre
Direct: 415-705-4604
[LD NTC Government]
OFFICE OF THE DISTRICT COUNSEL
Department of Homeland Security
P.O. Box 26449
San Francisco, CA 94126-6449

OIL
Direct: 202-616-4857
[COR LD NTC Government]
DOJ - U.S. DEPARTMENT OF JUSTICE
Civil Div./Office of Immigration Lit.
P.O. Box 878, Benjamin Franklin Station
Washington, DC 20044-0000

---

GURDEV SINGH,

      Petitioner

v.

MICHAEL B. MUKASEY, Attorney General,

      Respondent

---

| | | |
|---|---|---|
| 04/25/2007 | 1 | FILED AS OF 4/24/07. INS Petition for REV and Motion for Stay. Docketed Cause and Entered Appearance of Counsel. Pursuant to G.O. 6.4(c)(1)(3) A TEMPORARY STAY OF REMOVAL IS IN EFFECT pending further order. The schedule is set as follows: Pursuant to G.O. 6.4(c)(1)(3), the schedule is set as follows: Cert. Admin. Record due 6/19/07 Response to motion for stay due 7/17/07 for Alberto R. Gonzales MOATT [07-71577] |
| 04/25/2007 | 2 | Filed AS OF 4/24/07 Petitioner Gurdev Singh's motion to stay deportation (see schedule above) [07-71577] served on 4/24/07 [6156096] MOATT [07-71577] |
| 04/25/2007 | 3 | Verified that Petitioner's counsel of record has been admitted to practice in this court. [07-71577] |
| 08/03/2007 | 6 | Filed order MOATT (snr) The absence of a timely response to the stay motion is construed as a statement of non-opp to the stay motion. Accordingly, the temporary stay continues in effect until issuance of the mandate or further order of the court. The admin record is due 8/31/07. The opening brief is due 11/29/07; the answering brief is due 1/28/08. [07-71577] |
| 11/26/2007 | 7 | Filed Petitioner Gurdev Singh's motion to extend time to file petitioner's opening brief until 1/29/08 [07-71577] served on 11/26/07 [6357628] (PROMO) [07-71577] |

| | | |
|---|---|---|
| 12/03/2007 | 8 | Filed order (Deputy Clerk: gss) The petitioner's motion for an ext of time to file the opening brief is construed as a motion to amend the briefing schedule due to the absence of the admin record. The petitioner's motion to amend the briefing schedule is granted. The admin record is due 12/28/07. The briefing schedule is amended as follows: the opening brief is due 3/27/08; the answering brief is due 5/28/08. [07-71577] |
| 03/26/2008 | 9 | Filed Petitioner Gurdev Singh's motion to extend time to file petitioner brief until 05/27/2008. Served on 03/26/2008. |
| 03/28/2008 | 10 | Filed clerk order (Deputy Clerk:GSS): Setting schedule as follows: Petitioner opening brief due 07/21/2008 for Gurdev Singh. Respondent brief due 09/19/2008 for Michael B. Mukasey, Attorney General. Appellant's optional reply brief is due 14 days after service of the answering brief. |
| 04/10/2008 | 11 | Electronic Certified Administrative Record Filed. Number of Disks (CD-ROMs or DVDs): 1. |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 05/19/2008 09:47:43 | | | |
| PACER Login: | us2256 | Client Code: | CRB |
| Description: | Docket Report (filtered) | Search Criteria: | 07-71577 |
| Billable Pages: | 1 | Cost: | 0.08 |

Exhibit B

1 | JAMES FIFE
California State Bar No. 237620
2 | FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
3 | San Diego, CA 92101-5008
Telephone: (619) 234-8467
4 | james_fife@fd.org

5 | Attorneys for GURDEV SINGH

6

7

8 | UNITED STATES DISTRICT COURT

9 | SOUTHERN DISTRICT OF CALIFORNIA

10 | (HON. BARRY T. MOSKOWITZ)

11 | GURDEV SINGH,                          Case No. 08CV0464-BTM (JMA)

12 |                  Petitioner,

13 |         v.

14 | MICHAEL CHERTOFF, et al.,              DECLARATION OF GOPALAN NAIR

15 |                  Respondents.

16

17

18 | I, Gopalan Nair, declare:

19 | 1. I am an attorney licensed to practice in the State of California. I am the attorney of record for

20 | Petitioner, Gurdev Singh, in his petition for review in the Ninth Circuit, Case No. 07-71577.

21 | 2. I filed two requests for extension of time to file the opening brief in that case, because I was

22 | 
23 | concurrently bringing a state action to overturn the conviction which was the predicate to Mr. Singh's

24 | deportation order. Since the outcome of the state action could be dispositive of the petition for review, I

25 | requested the extensions to allow time for that matter to proceed.

26

27 | / / /

28 | / / /

1

4

3. I did not receive a copy of the certified administrative record for Case No. 07-71577 in August or September 2007. To date, I still have not received a service copy of the CAR from the Government.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 20th day of May 2008, in Fremont, California.

GOPALAN NAIR
Declarant

## CERTIFICATE OF SERVICE

Counsel for Defendant certifies that the foregoing is true and accurate to the best information and belief, and that a copy of the foregoing document has been caused to be delivered this day upon:

Courtesy Copy to Chambers

Copy to Assistant U.S. Attorney via ECF NEF

Copy to Plaintiff

Dated: May 21, 2008                           /s/ JAMES FIFE
                                              Federal Defenders of San Diego, Inc.
                                              225 Broadway, Suite 900
                                              San Diego, CA  92101-5030
                                              (619) 234-8467  (tel)
                                              (619) 687-2666  (fax)
                                              James_Fife@fd.org (email)